Argued and submitted April 15, affirmed October 20, 2010, petition for review denied April 7, 2011 (350 Or 231)

In the Matter of the Compensation of
William U. Suchi, Claimant.

William U. SUCHI,
*Petitioner,*

*v.*

SAIF CORPORATION
and Barkdusters, Inc.,
*Respondents.*

Workers' Compensation Board
0702227; A139089

241 P3d 1174

Donald M. Hooton argued the cause and filed the briefs for petitioner.

David L. Runner argued the cause and filed the brief for respondents.

Before Landau, Presiding Judge, and Ortega, Judge, and Sercombe, Judge.

LANDAU, P. J.

## LANDAU, P. J.

At issue in this workers' compensation case is whether claimant's award of permanent partial disability should include awards for both impairment and "work disability." Employer awarded only impairment because the relevant statute provides that, when a worker's employment "is terminated for cause unrelated to the injury," ORS 656.726(4)(f)(E)(iii),[1] that is the only factor to be considered and, in this case, claimant was laid off for reasons unrelated to his injury. The Workers' Compensation Board agreed. Claimant now seeks review, arguing that the board erred because the statutory reference to termination "for cause" requires proof of termination for misconduct, and there was no such evidence in this case. We affirm.

The relevant facts are not in dispute. Claimant was a seasonal worker for employer's landscaping business. He suffered a compensable injury on June 23, 2005, when the truck he was driving went off the road. SAIF, employer's insurer, accepted a claim for injuries to his hand, knees, chest, and back. Following treatment, claimant was released for regular work as of September 22, 2005. But, because of the seasonal nature of the landscaping business, employer did not offer claimant work.

SAIF closed the claim on October 26, 2006, with an award of six percent loss of the whole person for impairment to the low back. The notice of closure did not include work disability. Claimant requested reconsideration. On reconsideration, the Appellate Review Unit (ARU) determined that claimant was entitled to "whole person impairment" of 16 percent and work disability of 24 percent. The ARU order determined that, because claimant had not been terminated for cause unrelated to his injury, he was entitled to the disability award in addition to the impairment. The order assessed a penalty against SAIF.

---

[1] Because of the date of claimant's injury, the parties agree that the applicable statutes relating to permanent partial disability are those set forth in Oregon Laws 2003, chapter 657, compiled as notes after ORS 656.214 (2003) and ORS 656.726 (2003). Throughout this opinion, we refer to the 2003 versions of those statutes.

SAIF requested a hearing, contending that, under ORS 656.726(4)(f)(E)(iii), claimant is not entitled to an award for work disability because, due to the seasonal nature of the work, his employment had been "terminated for cause unrelated to the injury." The ALJ agreed with SAIF, finding that, by the time that claimant was released for work, "the employer's employees had been laid off for the winter," and claimant's regular job was no longer available. The board affirmed the ALJ's order, and claimant seeks review.

When an employer closes a claim, it is required to determine the worker's benefits for permanent partial disability, if any. ORS 656.268(1). A "permanent partial disability" is

"(A) Permanent impairment resulting from the compensable industrial injury or occupational disease; or

"(B) Permanent impairment and work disability resulting from the compensable industrial injury or occupational disease."

ORS 656.214(1)(c). Permanent partial disability thus may include only impairment or both impairment and work disability. ORS 656.214(1)(a) defines "impairment" as

"the loss of use or function of a body part or system due to the compensable industrial injury or occupational disease determined in accordance with the standards provided under ORS 656.726, expressed as a percentage of the whole person."

ORS 656.214(1)(e) defines "work disability" as "impairment modified by age, education and adaptability to perform a given job."

ORS 656.214(2) describes when an award for permanent partial disability must include only impairment or both of the two components:

"When permanent partial disability results from a compensable injury or occupational disease, benefits shall be awarded as follows:

"(a) If the conditions for the worker's return to or release for regular work in ORS 656.726(4) have been met, the award shall be for impairment only. * * *

"(b) If the conditions for the worker's return to or release for regular work in ORS 656.726(4) have not been met, the award shall be for impairment and work disability."

Both ORS 656.214(2)(a) and (b) contain a cross-reference to "the conditions for the worker's return to or release for regular work in ORS 656.726(4)." Accordingly, in determining whether a worker is entitled to benefits for "work disability," we must also refer to that cross-referenced statute.

ORS 656.726(4)(f)(E) describes three circumstances in which impairment is the only factor to be considered in determining the worker's disability:

"Notwithstanding any other provision of this section, impairment is the only factor to be considered in evaluation of the worker's disability under ORS 656.214(5) if:

"(i) The worker returns to regular work at the job held at the time of injury;

"(ii) The attending physician or nurse practitioner authorized to provide compensable medical services under ORS 656.245 releases the worker to regular work at the job held at the time of injury and the job is available but the worker fails or refuses to return to that job; or

"(iii) The attending physician or nurse practitioner authorized to provide compensable medical services under ORS 656.245 releases the worker to regular work at the job held at the time of injury but the worker's employment is terminated for cause unrelated to the injury."

Thus, impairment is the only factor to be considered in evaluating the worker's disability when (1) the worker returns to work at the job held at the time of injury; (2) the worker is released to return to work at the job held at the time of injury but fails or refuses to do so; or (3) the worker is released to return to work at the job held at the time of injury "but the worker's employment is terminated for cause unrelated to the injury." The focus of this case is on the third circumstance, when a worker is released for work at the job held at the time of injury and the worker's employment is terminated for "cause unrelated to the injury."

■ Specifically, the dispute in this case is whether the seasonal layoff of a worker who has been released for regular work is termination "for cause unrelated to the injury" within the meaning of ORS 656.726(4)(f)(E)(iii). In claimant's view, ORS 656.726(4)(f)(E)(iii) requires that the work for which the worker has been released actually be available. Further, claimant contends, a seasonal layoff is not a "termination" of employment for purposes of ORS 656.726(4)(f)(E)(iii). Finally, he contends that termination "for cause" means that the worker was terminated for misconduct. Claimant argues that the legislative history of the text now codified at ORS 656.726(4)(f)(E)(iii) supports his interpretation that a worker who has been released for work but laid off from employment through no fault of the worker is entitled to benefits for work disability.

SAIF responds that claimant did not preserve his argument that the statute requires termination for misconduct. It contends, further, that the text and context of ORS 656.726(4)(f)(E)(iii) do not support claimant's interpretation and that the unavailability of a seasonal job is a "terminat[ion] for cause unrelated to the injury."

We consider first claimant's contention that the provisions of ORS 656.726(4)(f)(E)(iii) apply only when the job to which the claimant has been released and from which the claimant has been terminated is actually available. That argument finds no support in the text of ORS 656.726(4)(f)(E)(iii), which does not say anything about the availability of the job. In contrast, subsection (4)(f)(E)(ii), relating to a worker's failure or refusal to return to the job, explicitly requires that "the job is available." If the legislature had intended to impose a similar requirement on the application of subsection (4)(f)(E)(iii), it could have so stated. We therefore reject claimant's contention that the availability of the job is a prerequisite for application of ORS 656.726(4)(f)(E)(iii).

We next address claimant's assertion that a "termination" within the meaning of ORS 656.726(4)(f)(E)(iii) is a formal firing and does not encompass a termination of employment as the result of a seasonal layoff. Claimant acknowledges that the common meaning of "termination"

encompasses any act that brings an employment relationship to an end. *See Webster's Third New Int'l Dictionary* 2359 (unabridged ed 2002) (defining termination as "end in time or existence"). He contends, however, that it is plausible that the legislature intended the narrower, more "formal" ending of the employment relationship, commonly understood as a "firing." Once again, we are not persuaded that there is any basis in the text of ORS 656.726(4)(f)(E)(iii) for the distinction that claimant seeks. We note that in *Tye v. McFetridge*, 342 Or 61, 74, 149 P3d 1111 (2006), the court said that, in common parlance, a seasonal layoff is a period of unemployment. We conclude that, in the absence of evidence that claimant would have been entitled to return to work after the seasonal layoff, the board did not err in treating the end of a period of seasonal employment as a termination of employment. *Id.*

Finally, we address claimant's contention that a termination "for cause" refers only to a termination for misconduct. At the outset, we reject SAIF's assertion that claimant failed to preserve that issue for our consideration. Claimant argued to the board that the statute required that the claimant be terminated "for cause." That was sufficient to encompass the argument that the termination must be for misconduct.

■    On the merits, however, we reject claimant's contention. The linchpin of his argument is that the term "termination for cause" has a commonly understood meaning and that that meaning is termination for misconduct. The problem with the argument is that it isolates the phrase from its context. It is an elementary principle of statutory construction in this state that we examine the meaning of a phrase in its context. *Vsetecka v. Safeway Stores, Inc.*, 337 Or 502, 508, 98 P3d 1116 (2004) (Ordinarily, text should not be read in isolation but must be considered in context.); *Lane County v. LCDC*, 325 Or 569, 578, 942 P2d 278 (1997) ("[W]e do not look at one subsection of a statute in a vacuum; rather, we construe each part together with the other parts in an attempt to produce a harmonious whole.").

In this instance, the phrase "terminated for cause" does not stand in isolation. Rather it is part of a larger phrase

that refers to cases in which "the worker's employment is terminated for *cause unrelated to the injury.*" ORS 656.726(4)(f)(E)(iii) (emphasis added). Thus, the "cause" for which a claimant is terminated is one that is "unrelated to the injury." Claimant concedes that that is a reasonable reading of the statute, but insists that any doubt about the legislature's intended meaning is eliminated by reference to the statute's legislative history. The legislative history on which claimant relies, however, consists of a single statement of a single nonlegislator at a hearing.

■    To begin with, we generally are reluctant to place too much weight on a single statement of a single witness in a legislative hearing. *State v. Guzek*, 322 Or 245, 261, 906 P2d 272 (1995) (cautioning against relying on statements of non-legislator witnesses); *State v. Stamper*, 197 Or App 413, 424-25, 106 P3d 172, *rev den*, 339 Or 230 (2005) ("[W]e are hesitant to ascribe to the Legislative Assembly as a whole the single remark of a single nonlegislator at a committee hearing."); *Linn-Benton-Lincoln Ed. v. Linn-Benton-Lincoln ESD*, 163 Or App 558, 569, 989 P2d 25 (1999) ("[W]e are reluctant to draw decisive inferences concerning legislative intent [because] * * * the statements were made by witnesses and are not direct expressions of legislative intent.").

■    Even assuming that the legislative history supported claimant's interpretation, we are required not to construe a statute in a way that is inconsistent with its plain text. *State v. Gaines*, 346 Or 160, 173, 206 P3d 1042 (2009) ("When the text of a statute is truly capable of having only one meaning, no weight can be given to legislative history that suggests—or even confirms—that legislators intended something different."). The plain text of ORS 656.214 and ORS 656.726(4) require the conclusion that a worker who has been released for work but who is unable to return to work for any cause not related to the injury is not entitled to "work disability." Thus, because claimant had been released for regular work at the time of claim closure, the only factor to be considered in rating his permanent partial disability is impairment.

Affirmed.