Argued and submitted March 15, affirmed June 13, 2012

In the Matter of the Compensation of
Jon M. Schleiss, Claimant.

Jon M. SCHLEISS,
*Petitioner,*

*v.*

SAIF CORPORATION
and Nugent Masonry, Inc.,
*Respondents.*

Workers' Compensation Board
0905174; A146996

281 P3d 626

Donald M. Hooton argued the cause and filed the briefs for petitioner.

Julie Masters argued the cause and filed the brief for respondents.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

## HADLOCK, J.

Claimant seeks review of an order of the Workers' Compensation Board that awarded him five percent permanent partial disability (PPD) for a compensable lumbar strain. The board based that award largely on a medical arbiter's determination that claimant had suffered lost range of motion due partly to his compensable condition and due partly to a noncompensable degenerative disease and claimant's long history of smoking. Claimant's challenges to the board's order include a contention that the board erred by apportioning claimant's disability between the compensable condition and his noncompensable condition, with the result that claimant received only a five percent PPD award instead of the 14 percent award that he would have received had the range-of-motion loss been attributable entirely to his compensable condition. In particular, claimant argues that OAR 436-035-0013 (2009), under which claimant's disability award was apportioned, "exceeds the statutory authority granted to the director in developing rules for the evaluation of impairment."[1] We review for errors of law and substantial evidence, ORS 183.482(8), and affirm.

We summarize the facts from the board's order and the record. Claimant compensably injured his low back while at work in April 2008, and SAIF accepted a lumbar strain. Claimant was taken off work after his injury and, over the next several months, received an extensive course of chiropractic care before being referred to Dr. Jeffrey Gerry. After examining claimant in late 2008, Gerry opined that claimant had "some symptoms suggestive of lumbar radiculopathy" and referred claimant to undergo a lumbar MRI. However, Gerry also authorized claimant "to try to go back to regular work." SAIF later provided Gerry with a description of claimant's regular job duties—which included lifting and carrying up to 80-pound loads on a daily basis—and a questionnaire asking whether claimant could return to regular work. Gerry

---

[1] Under OAR 436-035-0003(1), the disability rating standards apply to all claims "closed on or after the effective date of these rules[.]" Claimant's notice of closure was dated March 3, 2009. Accordingly, we apply the administrative rules that were in effect on that date, and all references to the Oregon Administrative Rules in this opinion are to that version of the rules.

completed the questionnaire, indicating that "yes," claimant could return to his regular work as of December 1, 2008. In February 2009, Gerry declared claimant medically stationary and released him to regular work without restriction.[2] Based on Gerry's findings, SAIF issued a notice of closure that did not award PPD benefits.

Claimant requested reconsideration and appointment of a medical arbiter, citing a disagreement "with the impairment findings used to determine and rate permanent disability." During a July 2009 medical arbiter examination, claimant reported that he had attempted to return to regular work in early March, but his back pain had recurred. Claimant also reported that he had been employed since that March attempt, but not in his regular work. Following his examination of claimant, the arbiter opined that claimant "has some limitation in his ability to use the spinal area. I would classify it as moderate. He cannot lift over 50 pounds and needs to avoid recurrent bending and twisting." The arbiter also explained that he "would attribute [claimant's impairment] findings mainly to the off the job factor":

> "This is based on the fact that his MRI demonstrates only mild degenerative changes at L1-2 and L4-5. He however does smoke and this contributes to an acceleration of the aging process. Based on the evaluation I would rate 33% of the problem secondary to his on-the-job and 67% secondary to his pre-existing mild DJD and long history of smoking."

Relying on the arbiter's impairment findings, the Appellate Review Unit of the Department of Consumer and Business Services (DCBS) issued an order on reconsideration awarding claimant five percent whole-person impairment and no work disability. The order on reconsideration explained that claimant was not entitled to work disability because he had been released to his at-injury job by his

---

[2] Gerry did not conduct a closing examination of claimant because, as Gerry noted, claimant had been out of town since his November examination, "apparently looking for * * * different work." *See* OAR 436-030-0020(2)(a) (indicating that a closing examination is not required where the attending physician's written statement clearly states that there is no permanent impairment or reasonable expectation of loss of use or function, and that statement is supported by the record). In a February 9, 2009, note, Gerry did state that he had reviewed the results of claimant's MRI and reported that "[t]here were no significant abnormalities noted."

attending physician, Gerry. *See* OAR 436-035-0009(4) ("[o]nly permanent impairment is rated for those workers * * * who have been released * * * to regular work"). The order also concluded that claimant was not entitled to a "chronic condition" award for his back condition because the arbiter had not described "significant limits on the ability to repetitively use the lumbar spine due to the accepted condition and/or direct medical sequelae." Finally, the order concluded that, because only the portion of impairment findings that are "due to" the compensable condition receive a value under OAR 436-035-0013, claimant's "value for loss of range of motion, 13.8%, is apportioned at 33% for an impairment value of 4.55%, which rounds to 5% under OAR 436-035-0011(4)."[3]

Claimant requested a hearing, challenging each of those conclusions. Specifically, claimant contended that, although his attending physician had released him to regular work, he was entitled to work disability based on the arbiter's report, which indicated that he could not do his "regular work" as it had been described to claimant's attending physician. Claimant also argued that the order on reconsideration erred in finding that claimant was not "significantly limited in the repetitive use" of his low back, as is required for a chronic condition impairment award under OAR 436-035-0019(1). Finally, claimant argued that OAR 436-035-0013, under which claimant's disability award was apportioned, "exceeds the statutory authority granted to the director in developing rules for the evaluation of impairment."

The ALJ affirmed the reconsideration order, finding that claimant's arguments were not consistent with existing case law and controlling statutes and administrative rules. The board affirmed the ALJ's order, and on judicial review, claimant renews the arguments that he made below.

We dispose of claimant's first two arguments in short order. Claimant's argument that he is entitled to PPD

---

[3] The 13.8 percent value for lost range of motion in claimant's low back was based on an application of the rating standards for that kind of impairment to the arbiter's range-of-motion findings, as specified in OAR 436-035-0360(8) to (11). The parties do not contest the accuracy of that total rating for claimant's loss of spinal range of motion.

benefits based on his claimed inability to perform his at-injury job, even though his attending physician released him to regular work, cannot be squared with the provisions of the Workers' Compensation Act. Under ORS 656.214(1)(c), PPD may include "only impairment" or may include "both impairment and work disability." *Suchi v. SAIF*, 238 Or App 48, 51, 241 P3d 1174 (2010), *rev den*, 350 Or 231 (2011). "Impairment" relates to "the loss of use or function of a body part." ORS 656.214(1)(a). Consistently with that focus on a "body part," claimant was awarded impairment benefits based on his lost range of motion in his back. "Work disability," on the other hand, is defined as "impairment modified by age, education and adaptability to *perform a given job*." ORS 656.214(1)(e) (emphasis added). That emphasis on ability to perform a particular job is reflected in the statutes that govern when an injured worker may be entitled to a work-disability award. Under ORS 656.214(2), work-disability benefits are available only to otherwise-qualified injured workers who have *not* been released to their regular work "by the attending physician or nurse practitioner." Accordingly, a worker who *has* been released to his or her regular work "by the attending physician or nurse practitioner" can be entitled to "only impairment benefits." ORS 656.726(4)(f)(E); *see* ORS 656.214(2)(a) ("If the worker has been released to regular work by the attending physician or nurse practitioner * * *, the award shall be for impairment only.").

Here, evidence supports the board's determination that claimant's attending physician, Gerry, released him to regular work. Consequently, claimant was not entitled to work-disability benefits. ORS 656.214(2)(a); ORS 656.726(4)(f)(E). We reject claimant's contrary argument, which is based on his assertion that we should not apply "the statutory subsection"—apparently referring to ORS 656.726(4)(f)(E)—"exactly as written."

Claimant's second argument fares no better. He contends that he was entitled to a "chronic condition" impairment award under OAR 436-035-0019(1), which states that a worker "is entitled to a 5% chronic condition impairment value" when, "due to a chronic and permanent medical condition, the worker is significantly limited in the repetitive use" of certain body parts. Claimant's argument is based on

the arbiter's determination that claimant has "some" "moderate" "limitation in his ability to use the spinal area." Claimant asserts that the board misinterpreted the words "significantly limited" when it determined that the arbiter's findings did not establish that claimant was significantly limited in the use of his back.

We disagree with a basic premise of claimant's argument, which is that the board applied an incorrect legal standard. Claimant identifies nothing in the board's order that suggests it misinterpreted the words "significantly limited." Rather, claimant's argument reduces to a claim that, because the board concluded that he was not "significantly limited" in using his back, the board *must have* applied the wrong legal standard. We are not persuaded. The board's order reflects that the board properly avoided looking for "magic words" (like "significant") in the medical arbiter's report and, instead, simply determined as a *factual* matter whether the arbiter's findings, including its determination that claimant had "some" "moderate" limitation, established that claimant's ability to use his back was significantly limited. Substantial evidence supports that determination, which we do not disturb.

Finally, claimant challenges the board's determination that his PPD award was properly "apportioned" based on the arbiter's determination that only 33 percent of his range-of-motion loss was due to his compensable condition and that the rest was attributable to his noncompensable degenerative disease and his long-term smoking. Claimant's award was apportioned pursuant to OAR 436-035-0013 (2009), which provides, in part, that,

"where a worker has a superimposed or unrelated condition, only disability due to the compensable condition is rated, provided the compensable condition is medically stationary. Then, apportionment is appropriate. Disability is determined as follows:

"(1) The physician describes the current total overall findings of impairment. The physician describes the portion of those findings that are due to the compensable condition. Only the portion of those impairment findings that are due to the compensable condition receive a value. * * *."

As explained above, the arbiter found that only 33 percent of claimant's range-of-motion loss was due to his compensable injury. Consequently, application of the apportionment rule led to claimant receiving only about 33 percent of the PPD benefits he otherwise would have obtained (a five percent award, as opposed to the 14 percent award he would have received if his impairment were due entirely to his compensable condition).

Claimant contends that the DCBS director acted outside the scope of statutory authority by adopting OAR 436-035-0013. *See* ORS 183.400(4)(b) (court may declare administrative rule invalid if it "[e]xceeds the statutory authority of the agency"). In that regard, claimant first argues that no provision of ORS chapter 656 "authorizes an apportionment of impairment or work disability." We disagree.

ORS 656.726(4)(f) authorizes the director to adopt rules that provide "standards for the evaluation of disabilities." That statute also provides that the "criterion for evaluation of permanent impairment under ORS 656.214 is the loss of use or function of a body part or system *due to* the compensable industrial injury or occupational disease." ORS 656.726(4)(f)(A) (emphasis added). The cross-referenced statute, ORS 656.214, similarly emphasizes that the "impairment" on which PPD impairment benefits are based is only that impairment that is "due to" the compensable condition:

> " 'Impairment' means the loss of use or function of a body part or system *due to* the compensable industrial injury or occupational disease determined in accordance with the standards provided under ORS 656.726, expressed as a percentage of the whole person."

ORS 656.214(1)(a) (emphasis added).

Thus, both ORS 656.214(1)(a) and ORS 656.726(4)(f)(A) contemplate that PPD impairment benefits will be awarded only for impairment that is "due to" the compensable condition. OAR 436-035-0013 implements those statutes by describing the way in which overall findings of impairment will be apportioned between "those [impairment] findings that are due to the compensable condition" and those that are

not. Put another way, the rule sets out the specific method for implementing the legislature's express intent that workers receive PPD benefits only for impairment "due to" compensable conditions. We reject claimant's argument that nothing in the Workers' Compensation Law authorized the DCBS director to adopt that rule.

Claimant also argues that the board's order conflicts with Supreme Court precedent. He contends that, in *Barrett v. D & H Drywall*, 300 Or 325, 709 P2d 1083 (1985), *adh'd to on recons*, 300 Or 553, 715 P2d 90 (1986) (*Barrett I*), which discussed a previous version of ORS 656.214, the court interpreted what it means for impairment to be "due to" a compensable condition in a way that precludes apportionment of disability in the manner that OAR 436-035-0013 specifies. Again, we disagree.

In *Barrett I*, the claimant had an underlying asymptomatic arthritic condition in his low back before he suffered the compensable injury, a fall that caused back pain. *Barrett I*, 300 Or at 327. The employer denied any liability for the arthritic condition but accepted responsibility for the compensable injury. *Id.* In considering whether the claimant also was entitled to any benefits for his arthritic condition under ORS 656.214(5) (1985), the Supreme Court held that nothing in that statute precluded the board from considering the worker's arthritic condition in making its PPD determination. *Id.* at 330. On reconsideration, the court clarified that the statutory phrase "due to the compensable injury" encompassed situations in which a compensable injury caused a previously asymptomatic condition to become symptomatic. *Barrett v. D & H Drywall*, 300 Or 553, 555-56, 715 P2d 90 (1986) (*Barrett II*). In those circumstances, the court explained, the "loss of earning capacity is 'due to' the compensable injury, and the statute requires an award of compensation therefor." *Id.* The court emphasized, however, that its "decision [did] not require any award of compensation" for a disease or resulting disability that existed before the compensable injury, if the compensable injury did not worsen or trigger symptoms of the underlying condition. *Id.*

Nothing in *Barrett I* or *Barrett II* precludes apportionment of impairment findings. To the contrary, the

Supreme Court carefully explained in its opinion on reconsideration that an injured worker's entitlement to disability benefits extends *only* to benefits for lost earning capacity that is caused by the compensable condition. 330 Or at 555-56. It follows that where a physician determines that an injured worker's impairment is due partly to a previously undiagnosed noncompensable condition—and the physician does not find that the noncompensable condition was worsened or rendered symptomatic by the compensable injury—apportionment is appropriate. OAR 436-035-0013 (2009) is consistent with those principles, it does not conflict with *Barrett I* or *Barrett II*, and the DCBS director did not lack statutory authority to adopt that rule.

Affirmed.