No. 66          December 27, 2013          637

IN THE SUPREME COURT OF THE
STATE OF OREGON

In the Matter of the Compensation of
Jon M. Schleiss, Claimant.

Jon M. SCHLEISS,
*Petitioner on Review,*

*v.*

SAIF CORPORATION
and Nugent Masonry, Inc.,
*Respondents on Review,*

*and*

DEPARTMENT OF CONSUMER
AND BUSINESS SERVICES,
*Intervenor.*

(WCB 0905174; CA A146996; SC S060774)

On review from the Court of Appeals.*

Argued and submitted September 16, 2013.

Donald M. Hooton, Hooton Wold & Okrent, LLP, Beaverton, argued the cause and filed the brief for petitioner on review.

Julie Masters, SAIF Corporation, Salem, argued the cause and filed the brief for respondents on review SAIF Corporation and Nuent Masonry Inc.

Michael A. Casper, Deputy Solicitor General, Salem, argued the cause for Intervenor Department of Consumer and Business Services. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Julene M. Quinn, Corvallis, and James S. Coon, Swanson Thomas Coon & Newton, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

––––––––––––––
   * Judicial review from Workers' Compensation Board. 250 Or App 458, 281 P3d 626 (2012).

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Brewer and Baldwin, Justices.**

BREWER, J.

The decision of the Court of Appeals is reversed, and the case is remanded to the Workers' Compensation Board for further proceedings.

_____

** Linder, J., did not participate in the consideration or decision of this case.

**BREWER, J.**

Our review of an order of the Workers' Compensation Board (the board) that made a permanent partial disability (PPD) award to claimant requires us to determine whether OAR 436-035-0013 (2009), an administrative rule adopted by the Director of the Department of Consumer and Business Services (DCBS), is inconsistent with the statutes that the Director intended to implement. We review to determine whether the board has erroneously interpreted a provision of law. ORS 183.482(8)(a)(B). For the reasons that follow, we reverse the decision of the Court of Appeals, and we remand this case to the board for further proceedings.

We take the material facts, in condensed form, from the Court of Appeals' opinion. *Schleiss v. SAIF*, 250 Or App 458, 459, 281 P3d 626 (2012). Claimant compensably injured his low back while at work in April 2008, and SAIF accepted his ensuing claim for a lumbar strain. Claimant was taken off work after his injury and, during the next several months, received an extensive course of chiropractic care before being referred to Dr. Jeffrey Gerry. After examining claimant in late 2008, Gerry opined that claimant had "some symptoms suggestive of lumbar radiculopathy," and he referred claimant for a lumbar MRI. In February 2009, Gerry reviewed the results of claimant's MRI and reported that "[t]here were no significant abnormalities noted." Gerry declared claimant medically stationary and released him to regular work without restriction. Based on Gerry's findings, SAIF issued a notice of closure that did not award PPD benefits to claimant.

Claimant requested reconsideration and the appointment of a medical arbiter, based on his disagreement "with the impairment findings used to determine and rate permanent disability." During a medical arbiter examination in July 2009, claimant reported that he had attempted to return to regular work in early March, but his back pain had recurred. Claimant also reported that he had been employed since that March attempt, but not in his regular work. After examining claimant, the arbiter opined that claimant "has some limitation in his ability to use the spinal area. I would classify it as moderate. He cannot lift over 50

pounds and needs to avoid recurrent bending and twisting." The arbiter also stated that he "would attribute [claimant's impairment] findings mainly to the off the job factor":

> "This is based on the fact that his MRI demonstrates only mild degenerative changes at L1-2 and L4-5. He however does smoke and this contributes to an acceleration of the aging process. Based on the evaluation I would rate 33% of the problem secondary to his on-the-job and 67% secondary to his pre-existing mild DJD and long history of smoking."

Relying on the medical arbiter's impairment findings, the Appellate Review Unit (ARU) of DCBS issued an order on reconsideration that awarded claimant PPD based on five percent whole-person impairment and no work disability. Among other things, the order on reconsideration concluded that, because only the portion of impairment findings that were "due to" claimant's compensable injury receive a value under OAR 436-035-0013, his "value for loss of range of motion," 13.8 percent, was apportioned at 33 percent, for an impairment value of 4.55 percent.[1]

In reaching that conclusion, the ARU relied on OAR 436-035-0013(1), which provides:

> "The physician describes the current total overall findings of impairment, then describes those findings that are due to the compensable condition. In cases where a physician determines a specific finding (e.g. range of motion, strength, instability, etc.) is partially attributable to the accepted condition, only the portion of those impairment findings that is due to the compensable condition receives a value. When apportioning impairment findings, the physician must identify any applicable superimposed or unrelated conditions."

That rule is intended to implement the Director's authority under two statutes. The first statute, ORS 656.726(4)(f)(A), calls for the director to establish PPD standards and criteria based on "the loss of use or function of a body part *** due to the compensable industrial injury." The second statute, ORS 656.214, which authorizes awards of PPD, provides, in part, that,

---

[1] That figure was rounded up to 5 percent under applicable DCBS rules.

"(1)(a)  'Impairment' means the loss of use or function of a body part or system due to the compensable industrial injury or occupational disease determined in accordance with the standards provided under ORS 656.726, expressed as a percentage of the whole person."

After the ARU issued its order on reconsideration, claimant requested a hearing before an administrative law judge (ALJ). Among other arguments, claimant contended that the workers' compensation statutes provide that "apportionment is appropriate only in the context of an accepted combined condition," and that, because no qualifying combined condition existed in this case, claimant was "entitled to an award for all of his impairment as long as it was caused in part by his accepted condition."

The ALJ affirmed the reconsideration order, and the board affirmed the ALJ's order. On judicial review before the Court of Appeals, claimant renewed his arguments before the board; in particular, claimant asserted that OAR 436-035-0013(1) is inconsistent with both the applicable statutes and this court's decision in *Barrett v. D & H Drywall*, 300 Or 325, 709 P2d 1083 (1985), *on recons* 300 Or 553, 715 P2d 90 (1986).

The Court of Appeals affirmed. As pertinent here, the court reasoned that,

"[b]oth ORS 656.214(1)(a) and ORS 656.726(4)(f)(A) contemplate that PPD impairment benefits will be awarded only for impairment that is 'due to' the compensable condition. OAR 436-035-0013 implements those statutes by describing the way in which overall findings of impairment will be apportioned between those '[impairment] findings that are due to the compensable condition' and those that are not. Put another way, the rule sets out the specific method for implementing the legislature's express intent that workers receive PPD benefits only for impairment 'due to' compensable conditions.

"* * * * *

"[W]here a physician determines that an injured worker's impairment is due partly to a previously undiagnosed noncompensable condition—and the physician does not find that the noncompensable condition was worsened or rendered symptomatic by the compensable injury—apportionment is

appropriate. OAR 436-035-0013 (2009) is consistent with those principles, it does not conflict with *Barrett I* or *Barrett II* and the DCBS director did not lack statutory authority to adopt that rule."

*Schleiss*, 250 Or App at 464-66.

The statutory phrase "due to" is an inexact term—that is, neither a term so precise that no interpretation is necessary nor a term (such as "good cause") indicating that the legislature intended to delegate the determination of its meaning to an agency charged with implementing the statute. *See Springfield Education Assn. v. School Dist.*, 290 Or 217, 223, 621 P2d 547 (1980) (summarizing the categorization of statutory terms). Accordingly, the Director's construction of the statutory term in his rule is not entitled to deference on review. *Id.* at 224, 229. In effect, then, the ultimate issue before us is whether the Court of Appeals' construction of ORS 656.214 is correct. If it is, then the Director's rule is consistent with the meaning of the statute; if not, then the rule is inconsistent with the statute, and the board's order in this case is erroneous. In conducting that inquiry, we employ our method of statutory construction set out in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), to ascertain the legislature's intent. *See also State v. Klein*, 352 Or 302, 309, 283 P3d 350 (2012) (when construing statutes, court reviews statutory text and context, including related statutes).

ORS 656.214 provides, in part:

"(1)   As used in this section:

"(a)   'Impairment' means the loss of use or function of a body part or system due to the compensable industrial injury or occupational disease determined in accordance with the standards provided under ORS 656.726, expressed as a percentage of the whole person.

"* * * * *

"(c)   'Permanent partial disability' means:

"(A)   Permanent impairment resulting from the compensable industrial injury or occupational disease; or

"(B)   Permanent impairment and work disability resulting from the compensable industrial injury or occupational disease.

In defining "impairment" in ORS 656.214(1)(a), the legislature used the term "due to" to describe the necessary causal relationship between a compensable injury and the loss of use or function of a body part or system. Claimant asserts that, for purposes of an award under ORS 656.214, "due to" means "caused in material part by," so that, if the compensable injury materially contributed to the total impairment, all the impairment is "due to" the compensable injury. SAIF, on the other hand, asserts that the phrase refers to the percentage of the worker's total impairment that was caused by the compensable injury, so that the percentage of the total impairment "due to" any other contributing cause must be excluded from an award.

On the surface of things, either of those proposed meanings is plausible. The dictionary meaning of "due to" is "because of." *Webster's Third New Int'l Dictionary* 699 (unabridged ed 2002). Consistently with that meaning, as claimant asserts, "due to" could mean that a compensable injury must have materially contributed to a worker's total impairment; alternatively, as SAIF contends, "due to" could refer instead to the percentage of a worker's total impairment to which the compensable injury contributed. The resolution of the parties' dispute therefore requires a detailed examination of the pertinent statutory framework in an effort to discern the meaning of the term in its context.

The standard for determining the compensability of an injury is an appropriate point of departure. ORS 656.005(7)(a) provides, in part, that a "compensable injury" is "an accidental injury, *** arising out of and in the course of employment requiring medical services or resulting in disability or death." This court has construed the phrase "arising out of" to mean that a workplace injury must be a material contributing cause of disability or the need for medical treatment in order to be compensable. *Olson v. State Ind. Acc. Com.*, 222 Or 407, 414, 352 P2d 1096 (1960). In *Olson* the court stated:

> "Reduced to its simplest form[,] 'arising out of' as used in the act means the work or labor being performed was a causal factor in producing the injury suffered by the [worker]. It need not be the sole cause, but is sufficient if

the labor being performed in the employment is a material, contributing cause which leads to the unfortunate result."

*Id*. at 414-15 (internal citations omitted). That standard is still recognized by this court as the test for establishing the existence of a compensable injury under ORS 656.005(7)(a). *Hopkins v. SAIF*, 349 Or 348, 351, 245 P3d 90 (2010).

The material contributing cause standard does not govern the compensability of all conditions, however. In 1990, the legislature amended ORS 656.005(7)(a) to include subsections (A) and (B), pertaining to consequential and combined conditions respectively, and to which a major contributing cause standard applies. A major contributing cause is one that "contributes more to the injury for which the worker seeks compensation than all other causes combined, or most of the cause." *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 133-34, 23 P3d 333 (2001).[2]

ORS 656.005(7)(a) (A) and (B) provide:

"(A)   No injury or disease is compensable as a consequence of a compensable injury unless the compensable injury is the major contributing cause of the consequential condition.

"(B)   If an otherwise compensable injury combines at any time with a preexisting condition to cause or prolong disability or a need for treatment, the combined condition is compensable only if, so long as and to the extent that the otherwise compensable injury is the major contributing cause of the disability of the combined condition or the major contributing cause of the need for treatment of the combined condition."

ORS 656.005(24), in turn, defines the term "preexisting condition":

"(a)  'Preexisting condition' means, for all industrial injury claims, any injury, disease, congenital abnormality, personality disorder or similar condition that contributes to disability or need for treatment, provided that:

"(A)   Except for claims in which a preexisting condition is arthritis or an arthritic condition, the worker has

---

[2]   Similarly, a preexisting condition that is exacerbated by a work injury can be compensable, but only if the work injury is the major contributing cause of a "pathological worsening of the pre-existing condition." ORS 656.225.

been diagnosed with such condition, or has obtained medical services for the symptoms of the condition regardless of diagnosis; and

"(B)(i)   In claims for an initial injury or omitted condition, the diagnosis or treatment precedes the initial injury;

"(ii)   In claims for a new medical condition, the diagnosis or treatment precedes the onset of the new medical condition; or

"(iii)   In claims for a worsening pursuant to ORS 656.273 or 656.278, the diagnosis or treatment precedes the onset of the worsened condition."

In addition to enacting ORS 656.005(7)(a)(A) and (B), in 1990 the legislature amended ORS 656.262(6)(b) to require that a notice of acceptance must "specify what conditions are compensable." And, in the same session, the legislature enacted ORS 656.262(6)(c) and (7)(b), which provide:

"(6)(c)   An insurer's or self-insured employer's acceptance of a combined or consequential condition under ORS 656.005(7), whether voluntary or as a result of a judgment or order, shall not preclude the insurer or self-insured employer from later denying the combined or consequential condition if the otherwise compensable injury ceases to be the major contributing cause of the combined or consequential condition.

"* * * * *

"(7)(b)   Once a worker's claim has been accepted, the insurer or self-insured employer must issue a written denial to the worker when the accepted injury is no longer the major contributing cause of the worker's combined condition before the claim may be closed."

After an injury is determined to be compensable, benefits are payable under specific statutes, including temporary disability to replace lost wages (ORS 656.210), medical services (ORS 656.245), permanent disability to compensate for permanent loss of earning capacity (ORS 656.214), and vocational services for retraining (ORS 656.340).

To reiterate, ORS 656.214, the benefit statute at issue here, provides, in part:

"(1)   As used in this section:

"(a)   'Impairment' means the loss of use or function of a body part or system due to the compensable industrial injury or occupational disease determined in accordance with the standards provided under ORS 656.726, expressed as a percentage of the whole person.

"* * * * *

"(c)   'Permanent partial disability' means:

"(A)   Permanent impairment resulting from the compensable industrial injury or occupational disease; or

"(B)   Permanent impairment and work disability resulting from the compensable industrial injury or occupational disease.

"* * * * *

"(e)   'Work disability' means impairment modified by age, education and adaptability to perform a given job.

"* * * * *

"(3)   Impairment benefits awarded under subsection (2)(a) of this section shall be expressed as a percentage of the whole person."

Thus, permanent disability includes two parts—"impairment" and "work disability." "Impairment" means the objective loss of use or function of a body part "due to" the compensable injury, expressed as a percentage of the whole person. ORS 656.214(1)(a); 656.726(4)(f)(A). "Work disability" means impairment modified by age, education, and adaptability to perform a given job. ORS 656.214(1)(e).

When a worker who has suffered a compensable injury becomes medically stationary,[3] the insurer closes the claim and awards any applicable benefits. ORS 656.268(1)(a); (5). If the worker objects to the notice of closure or the award, the worker may request reconsideration. ORS 656.268(5)(c). For purposes of reconsideration, the Director must appoint a medical arbiter if the worker's physical impairment is in question. ORS 656.268(8). The claimant has the burden to establish the nature and extent of any impairment that is

---

[3] "Medically stationary" means that "no further material improvement would reasonably be expected from medical treatment, or the passage of time." ORS 656.005(17).

due to the compensable condition. ORS 656.266. Impairment must be established by a preponderance of medical evidence based upon objective findings. ORS 656.726(4)(f)(A) and (B). Objective findings of impairment might include, for example, measurable changes in the claimant's range of motion or muscle strength. ORS 656.005(19).

To fully frame the disability award analysis, ORS 656.268(1) provides:

"(1)   One purpose of this chapter is to restore the injured worker as soon as possible and as near as possible to a condition of self support and maintenance as an able-bodied worker. The insurer or self-insured employer shall close the worker's claim, as prescribed by the Director of the Department of Consumer and Business Services, and determine the extent of the worker's permanent disability, provided the worker is not enrolled and actively engaged in training according to rules adopted by the director pursuant to ORS 656.340 and 656.726, when:

"(a)   The worker has become medically stationary and there is sufficient information to determine permanent disability; [or]

"(b)   The accepted injury is no longer the major contributing cause of the worker's combined or consequential condition or conditions pursuant to ORS 656.005 (7). When the claim is closed because the accepted injury is no longer the major contributing cause of the worker's combined or consequential condition or conditions, and there is sufficient information to determine permanent disability, the likely permanent disability that would have been due to the current accepted condition shall be estimated."

Thus, the legislature has generally authorized the Director to "determine the extent of the worker's permanent disability" in either of two circumstances: (1) when the worker is medically stationary and there is sufficient information to determine permanent disability, ORS 656.268(1)(a); or (2) where a combined condition exists, the compensable injury is no longer the major cause of the disability and no longer the major cause of any need for treatment, and there is sufficient information to determine permanent disability. ORS 656.268(1)(b).

Where, under ORS 656.268(1)(a), a claimant's combined condition has become medically stationary and the accepted injury remains the major contributing cause of the claimant's combined condition, the entire combined condition—that is, the effect of the work injury and the preexisting condition—remains compensable. ORS 656.005(7)(a)(B). And, because the combined condition makes up the compensable injury under ORS 656.214(1)(c), the entire condition is rated for impairment at claim closure. That is, because there is no other legally cognizable cause whose contribution may be considered, all the claimant's impairment is "due to" the compensable injury under ORS 656.214(1)(a). On the other hand, where ORS 656.268(1)(b) applies, the legislature has implicitly provided for an apportionment of causes contributing to a worker's impairment, so that the impairment "due to" the compensable injury is limited to the percentage of the total impairment to which the injury contributed. ORS 656.005(7)(a)(B); ORS 656.214(1)(c); ORS 656.268(1)(b).

One additional contextual matter merits attention as we clear the decks for analysis. Before the 1990 amendments to ORS 656.005(7) were enacted, this court had addressed the nature of the necessary causal relationship under ORS 656.214 between impairment and the causes contributing to it. In *Barrett*, the claimant had an underlying asymptomatic arthritic condition in his low back before he suffered a compensable fall that caused back pain. *Barrett I*, 300 Or at 327. The employer denied any liability for the arthritic condition but accepted responsibility for the compensable injury. *Id.* In considering whether the claimant also was entitled to benefits for his arthritic condition under ORS 656.214(5) (1985),[4] this court held that nothing in that statute precluded the board from including impairment caused by the worker's arthritic condition in making a PPD award. *Id.* at 330. On reconsideration, the court clarified that impairment "due to the compensable injury" included impairment triggered by a compensable injury that had caused a previously asymptomatic condition to become symptomatic. *Barrett v. D & H Drywall*, 300 Or 553, 555-56, 715 P2d 90 (1986) (*Barrett II*).

---

[4] ORS 656.214(5) (1985) provided that the criterion for a rating of disability for permanent partial disability "shall be the permanent loss of earning capacity due to the compensable injury."

In such circumstances, the court explained, the "loss of earning capacity is 'due to' the compensable injury, and the statute requires an award of compensation therefor." *Id*. The court emphasized, however, that its "decision [did] not require any award of compensation" for a disease or resulting disability that existed before the compensable injury, unless the compensable injury worsened or triggered symptoms of the underlying condition. *Id*.

As noted, in deciding this case, the Court of Appeals distinguished *Barrett*, observing that, here, there was no evidence that claimant's workplace injury had worsened, or triggered symptoms from, the other causes that contributed to claimant's impairment. *Schleiss*, 250 Or App at 466. Although that distinction is apt, its significance here is limited, because claimant's theory does not depend on proof of a worsening or the triggering of symptoms of either of those other contributing causes. Instead, as discussed below, he asserts that those contributing causes are immaterial to the proper legal analysis.

However, *Barrett* is of doubtful utility here for another fundamental reason. When *Barrett* was decided in 1985, no statute addressed the role in PPD award determinations of impairment that is attributable to a preexisting condition that has combined with a compensable injury. Thus, in *Barrett I*, this court specifically noted the lack of any reference to preexisting conditions in ORS 656.214. 300 Or at 330. However, the court concluded that the legislature's failure to mention preexisting conditions was insufficient to indicate that impairment caused by such conditions should be excluded from PPD awards that are due to a compensable injury; indeed, the court relied on the fact that no statute prohibited the board from including impairment caused by preexisting conditions in such an award. *Id*. However, the workers' compensation statutes now provide specific standards for determining how and when conditions that "combine" workplace injuries with preexisting conditions are compensable and how and when impairment caused by such conditions can be apportioned. In light of those statutory changes, impairment attributable to a legally cognizable preexisting condition now must be apportioned in a PPD

award where a combined condition has been established, and the compensable injury is no longer the major contributing cause of the impairment or the need for medical treatment. Therefore, irrespective of the holding in *Barrett*, if claimant's claim had been for a combined condition and, at the time of closure, his compensable injury was no longer the major contributing cause of his impairment or need for treatment, under the current statutory regime his PPD award would be reduced by the contribution of any legally cognizable preexisting condition. ORS 656.268(1)(b).

The preceding overview provides the necessary context for our consideration of the administrative rule at issue here. OAR 436-035-0013(1) prescribes a standard for determining the extent of a worker's impairment when the impairment is attributable both to a compensable injury and to some other contributing cause. As discussed, the rule provides as follows:

> "The physician describes the current total overall findings of impairment, then describes those findings that are due to the compensable condition. In cases where a physician determines a specific finding (e.g. range of motion, strength, instability, etc.) is partially attributable to the accepted condition, only the portion of those impairment findings that is due to the compensable condition receives a value. When apportioning impairment findings, the physician must identify any applicable superimposed or unrelated conditions."

Claimant challenges the validity of the second sentence of that subsection, which provides that, "In cases where a physician determines a specific finding (e.g., range of motion, strength, instability, etc.) is partially attributable to the accepted condition, only the portion of those impairment findings that is due to the compensable condition receives a value." According to claimant, that part of the rule circumvents the combined condition process, and it reduces impairment that otherwise would be awarded without apportionment. Therefore, claimant reasons, the rule is invalid.

SAIF responds that, because a portion of a worker's impairment may be due to a compensable injury and another

portion may be due to other contributing causes, apportionment is an appropriate method for the director to implement the statutes as written. According to SAIF, if claimant wished to have an impairment caused in part by a preexisting condition included in his PPD award, he should have attempted to establish that his compensable injury was the major contributing cause of his impairment in a combined condition claim. In SAIF's view, claimant had the burden of asserting and proving such a claim, and he failed to do so. *See* ORS 656.266.[5]

We conclude that it is unnecessary to resolve the parties' disagreement concerning the burdens of asserting and proving a combined condition claim, because there is no evidence in the record that either of the contributing causes on which the medical arbiter and the board relied is a legally cognizable preexisting condition that would authorize the apportionment of claimant's impairment in a combined condition claim. And, as elaborated below, that conclusion is central to our resolution of this case.

We begin with the board's apportionment of claimant's impairment based on the accelerated aging effects of his smoking history. Age must, by statute, be considered as part of an injured worker's "work disability" award: "work disability" determinations include as considerations a worker's "age, education and adaptability to perform a given job." ORS 656.214(1)(e). The premise, of course, is that an older worker generally is less adaptable to other employment and, therefore, is entitled to receive a higher disability award for

---

[5]  ORS 656.266 provides:

"(1) The burden of proving that an injury or occupational disease is compensable and of proving the nature and extent of any disability resulting therefrom is upon the worker. The worker cannot carry the burden of proving that an injury or occupational disease is compensable merely by disproving other possible explanations of how the injury or disease occurred.

"(2) Notwithstanding subsection (1) of this section, for the purpose of combined condition injury claims under ORS 656.005 (7)(a)(B) only:

"(a) Once the worker establishes an otherwise compensable injury, the employer shall bear the burden of proof to establish the otherwise compensable injury is not, or is no longer, the major contributing cause of the disability of the combined condition or the major contributing cause of the need for treatment of the combined condition.

"(b) Notwithstanding ORS 656.804, paragraph (a) of this subsection does not apply to any occupational disease claim."

the same injury than a younger worker. DCBS's own rules recognize that principle; under the director's permanent disability administrative rules, injured workers over 40 years old are entitled to receive an additional point that increases the work disability portion of their permanent disability awards. OAR 436-035-0012(1) and (2).

That premise is reinforced by the fact that, on the record before us, claimant's posited accelerated aging would not qualify as a preexisting condition under ORS 656.005(24). For any condition other than arthritis or an arthritic condition to so qualify, the worker must have "been diagnosed with such condition, or ha[ve] obtained medical services for the symptoms of the condition regardless of diagnosis." ORS 656.005(24)(a)(A). There is no evidence in the record that accelerated aging is a diagnosable condition or that, even if it is, claimant ever was diagnosed with it or treated for its symptoms before he suffered the workplace injury that SAIF accepted. Accordingly, claimant's accelerated aging would not qualify as a preexisting condition for purposes of a combined condition analysis under ORS 656.005(7).

The same is true of claimant's "mild degenerative condition." Although claimant had post-injury evidence of a preexisting degenerative disc condition, the record does not establish the existence of any preexisting disability or impairment due to that condition. Dr. Gerry, claimant's examining physician, concluded that claimant had some indications of a radiculopathy, and he obtained an MRI. However, Gerry found no significant abnormalities in the MRI results. And the medical arbiter merely described that contributing cause as "mild degenerative change."

Again we note that, as with claimant's accelerated aging, there is no evidence that claimant was diagnosed with any degenerative condition before he suffered his workplace injury. Accordingly, that contributing cause could qualify as a preexisting condition only if it amounted to "arthritis" or an "arthritic condition" under ORS 656.005(24)(a)(A). We addressed the meaning of those statutory terms in *Hopkins*. We held that, as used in that statute, "arthritis" "mean[s] the inflammation of one or more joints, due to infectious,

metabolic, or constitutional causes, and resulting in breakdown, degeneration, or structural change." 349 Or at 364. We also concluded that, to establish the existence of a preexisting arthritic condition, an employer must adduce expert testimony that the claimant suffers from "inflammation of whatever joint or joints it contends are affected by the arthritic condition." *Id.* at 363.

In this case, there is no evidence that the mild degenerative condition that the medical arbiter identified included any inflammation of claimant's joints. In addition, there is no evidence that, before his compensable injury occurred, claimant had been diagnosed with, or treated for, arthritis or an arthritic condition. It follows that there is no evidence from which the board could determine that claimant's degenerative condition was a legally cognizable preexisting condition for the purpose of a combined condition analysis.

Because claimant's accelerated aging and mild degenerative condition were not legally cognizable preexisting conditions, they also could not trigger the apportionment of claimant's impairment in a *true* combined condition claim. As noted, ORS 656.266(2)(a) provides:

"(2)   Notwithstanding subsection (1) of this section, for the purpose of combined condition injury claims under ORS 656.005 (7)(a)(B) only:

"(a)   Once the worker establishes an otherwise compensable injury, the employer shall bear the burden of proof to establish the otherwise compensable injury is not, or is no longer, the major contributing cause of the disability of the combined condition or the major contributing cause of the need for treatment of the combined condition."

That provision does not require an analysis of what, in some general sense, has caused an injured worker to become impaired or need treatment. Rather, it requires identification of the major cause of any disability or need for treatment of the combined condition, suggesting that the board should compare only the contributions of the component parts of the combined condition. To confirm the point, ORS 656.262(6)(c) refers simply to whether the otherwise compensable injury is the major contributing cause of the combined condition itself. Thus, the legislature has equated the

contributing causes of disability—including impairment—
of a combined condition with the contributing causes of the
combined condition.

Accordingly, other contributing causes—such as
the accelerated aging effects of a long smoking history or a
mild degenerative condition—that are neither encompassed
within the compensable injury nor are legally cognizable
preexisting conditions, play no role in the impairment calcu-
lus of a combined condition claim. Yet, in applying OAR 436-
035-0013(1), the board treated claimant's accelerated aging
and mild degenerative condition as contributing causes that,
in effect, combined to produce claimant's impairment and
required its apportionment under ORS 656.214.

That treatment is inconsistent with the statutory
scheme, because it is illogical to conclude that the legislature
intended to authorize the apportionment of an injured worker's
impairment based on the contribution of such a cause.
That is so because, if that were the legislature's intent, any
preexisting contributing cause would have to qualify for
apportionment under ORS 656.214, even where—because
a compensable injury was the major contributing cause of
the impairment—a statutorily cognizable preexisting con-
dition would not so qualify. It defies reason to believe that,
for purposes of apportionment of a worker's impairment,
the legislature would afford such preferential treatment to
a preexisting contributing cause that would not be legally
cognizable in a combined condition claim. To the contrary,
if a preexisting contributing cause would not qualify to
reduce the impairment that is "due to" a compensable com-
bined condition under ORS 656.268(1)(b), it makes no sense
to conclude that such a cause would qualify to reduce the
impairment that is "due to" a claimant's compensable injury
under ORS 656.214.[6]

There is no indication that the legislature intended
the phrase "due to" in ORS 656.214 to have a different mean-
ing than in ORS 656.268. In both statutes, depending on

---

[6] We deliberately refer to a *preexisting* contributing cause in making this
point. This case does not present an occasion to decide whether—or under what
circumstances—a contributing cause arising *after* a compensable injury would be
legally cognizable for purposes of apportioning impairment under ORS 656.214.

the circumstances, the phrase could require the apportionment of a worker's impairment based on contributing causes that are unrelated to the compensable injury. However, to qualify for the apportionment of impairment, a cause must be legally cognizable. In this case, apart from the compensable injury, there are no other legally cognizable contributing causes that claimant's impairment is "due to" under either statute. It follows that all of claimant's impairment is "due to" the compensable injury for purposes of making a PPD award under ORS 656.214. The board nevertheless treated claimant's preexisting accelerated aging and mild degenerative changes as contributing causes for purposes of apportioning his impairment. Because the board's order was based on the Director's rule, it is erroneous.[7] ORS 183.482(8)(a)(B).

The decision of the Court of Appeals is reversed, and the case is remanded to the Workers' Compensation Board for further proceedings.

---

[7] We note in passing that SAIF argues for the first time before this court that claimant failed to exhaust his administrative remedies because he did not establish that his impairment was due to his compensable injury rather than "his preexisting mild [degenerative joint disease] and long history of smoking." As explained above, because those contributing causes cannot be considered in rating claimant's impairment, they do not support SAIF's exhaustion argument.