FLYNN, J.
**468 The dispute in this workers' compensation case arises from the intersection of overlapping statutory provisions that control the determination of a worker's permanent partial disability. ORS 656.214 obligates employers to provide compensation for a worker's permanent impairment, meaning "loss of use or function" that is "due to the compensable industrial injury." ORS 656.214(1)(a). But another statute limits the employer's liability when the compensable injury combines with a qualifying "preexisting condition" to "cause or prolong" the injured worker's' disability or need for medical treatment, unless the compensable injury is the "major contributing *69 cause" of the "combined condition."[1] ORS 656.005(7)(a)(B). As part of that liability limit, the legislature has created a process by which the employer issues a denial of the "combined condition" and then pays permanent partial disability compensation only for the estimated portion of the worker's permanent impairment that is attributable to the "current accepted condition." ORS 656.268 (1)(b). The question we must resolve is whether the legislature intended that an employer would obtain the same limited liability when the employer has not followed the process that the legislature has created for estimating a reduced amount of permanent impairment following the denial of a "combined condition." We conclude that the legislature intended that injured workers would be fully compensated for new impairment if it is due in material part to the compensable injury, except where an employer has made use of the statutory process for reducing liability after issuing a combined condition denial.
I. BACKGROUND
A. Overview of the Workers' Compensation Claims Process
We begin with an overview of key terminology and the basic workers' compensation claim process before **469 explaining the procedural history of this particular case. "A 'compensable injury' is an accidental injury *** arising out of and in the course of employment requiring medical services or resulting in disability or death[.]" ORS 656.005(7)(a). Traditionally, an injury "arises out of" a worker's employment " 'if the labor being performed in the employment is a material, contributing cause which leads to the unfortunate result.' " Schleiss v. SAIF , 354 Or. 637, 643-44, 317 P.3d 244 (2013) (quoting Olson v. State Ind. Acc. Com. , 222 Or. 407, 414-15, 352 P.2d 1096 (1960) ); see also Hopkins v. SAIF , 349 Or. 348, 351, 245 P.3d 90 (2010) (describing a "compensable injury" as proven by a "material contributing cause" standard). When an injury is compensable, the worker may be entitled to a variety of benefits through the period of recovery, including "medical services for conditions caused in material part by the injury," temporary disability compensation for lost wages, and permanent partial disability compensation. ORS 656.245 ; ORS 656.210 ; ORS 656.214.
The rule for compensation is different when the worker has a "combined condition," which arises when an "otherwise compensable injury combines *** with a preexisting condition to cause or prolong disability or a need for treatment." ORS 656.005(7)(a)(B).[2] If the worker has a combined condition, it "is compensable only if, so long as and to the extent that the otherwise compensable injury is the major contributing cause of the disability of the combined condition or the major contributing cause of the need for treatment of the combined condition." Id . However, only certain preexisting causes qualify as a "preexisting condition" that can form a "combined condition"-generally only conditions diagnosed prior to the injury or "arthritis." ORS 656.005(24)(a).[3]
**470 If the worker has a "combined condition," then the claim may be closed when the "accepted injury is no longer the major contributing cause of the worker's combined ***
*70 condition." ORS 656.268(1)(b). But, "before the claim may be closed" on that basis, the employer must send the worker a written notice denying the combined condition. ORS 656.262(7)(b).
When an employer closes a worker's claim, the employer "shall issue *** an updated notice of acceptance that specifies which conditions are compensable." ORS 656.262(7)(c). Also at the time of closure, the employer calculates and pays permanent partial disability. ORS 656.214.[4] In general, "permanent partial disability" means "[p]ermanent impairment resulting from the compensable industrial injury," where "impairment" is "the loss of use or function of a body part or system due to the compensable industrial injury." ORS 656.214(1)(a), (c)(A). Permanent impairment is measured according to standards adopted by the Director of the Department of Consumer and Business Services and is "expressed as a percentage of the whole person." ORS 656.214(1)(a) ; ORS 656.726(4)(f). However, if the claim has been closed "because the accepted injury is no longer the major contributing cause of the worker's combined or consequential condition or conditions," then permanent partial disability compensation is based on an estimate of "the likely permanent disability that would have been due to the current accepted condition." ORS 656.268(1)(b).
B. Procedural History of this Case
Employer's calculation of permanent partial disability in the notice of claim closure is the source of the dispute that arose in this case. Claimant injured her back at work, and employer issued a notice of acceptance listing the accepted condition as a "lumbar strain." A few months later, claimant underwent surgery to address a lumbar disc herniation, but she continued to experience back pain and **471 enrolled in and completed a comprehensive pain management program. At discharge from that program, a staff physician measured diminished lumbar range of motion but also noted preexisting arthritis in the lumbar spine, which the evaluator estimated contributed to 50 percent of the impairment in claimant's spine. However, claimant did not request that employer accept a "combined condition," and employer did not accept or deny a "combined condition."
When claimant's attending physician released her to return to regular work, the physician concurred with the earlier evaluator that preexisting arthritis contributed to an estimated 50 percent of claimant's lumbar impairment. Based on that report, employer issued a notice of closure in which it calculated claimant's permanent partial disability as 50 percent of her impairment from reduced range of motion. On reconsideration, the department's medical arbiters estimated that claimant's arthritis was actually responsible for 70 percent of her current impairment, and the Order on Reconsideration reduced her permanent partial disability compensation accordingly.
On review of that decision, the administrative law judge and the Workers' Compensation Board agreed that the department had correctly reduced claimant's disability to factor out the estimated contribution from her preexisting arthritis. The board reasoned: "[I]t is undisputed that claimant's permanent impairment is due in part to 'arthritis ' (i.e. , a legally cognizable 'preexisting condition') and in part to her accepted lumbar strain. Accordingly, claimant's impairment was appropriately apportioned." The Court of Appeals affirmed in a per curiam opinion, citing to an earlier decision in which it had held that, if the worker has a "legally cognizable" preexisting condition (such as claimant's arthritis ), then "impairment due to the compensable industrial injury" is calculated by factoring out the estimated contribution from the preexisting condition, "unless [the preexisting condition] is part of an accepted combined condition claim that remains compensable at the time of closure."[5]
*71 McDermott v. SAIF , 286 Or. App. 406, 420, 422, 398 P.3d 964 (2017).
**472 Claimant argues that the Court of Appeals has misconstrued the meaning of loss "due to the compensable industrial injury," on which permanent partial disability is based. According to claimant, the legislature intended ORS 656.268(1)(b) to provide an exception to a general rule that the employer is obligated to pay compensation for the full measure of the worker's disability if the disability as a whole is caused in material part by the compensable injury, and the legislature intended that employers would obtain the benefit of that exception only by following the specified process. In other words, the dispute turns on whether the legislature intended that permanent partial disability for workers with a preexisting condition will be calculated automatically under the method described in ORS 656.268(1)(b)-absent an "accepted combined condition"-or whether the legislature intended that permanent partial disability will be calculated under the method described in ORS 656.268(1)(b) only when the employer has issued a denial of a "combined condition" and closed the claim under the process specified in ORS 656.268(1)(b). We allowed review to resolve that question of statutory construction.
II. DISCUSSION
As with all questions of statutory construction, our goal is to determine the intention of the legislature when it enacted the relevant statutes. See State v. Gaines , 346 Or. 160, 171, 206 P.3d 1042 (2009). We have explained that the words adopted by the legislature provide the best evidence of what the legislature intended, although we also give appropriate weight to any pertinent legislative history. Id . at 171-72, 206 P.3d 1042. We examine the "workers' compensation statutes as a whole" and our "prior judicial interpretations" of those statutes to determine whether the legislature intended that the estimated contribution from a preexisting condition would be factored out of a workers' permanent impairment only when an employer follows the process specified in ORS 656.268(1)(b) for accomplishing that result. See Brown v. SAIF , 361 Or. 241, 283, 391 P.3d 773 (2017) (explaining that process for construing a different provision of chapter 656).
To understand whether the legislature intended the process for denying and closing a "combined condition" to **473 be the only process through which an employer's liability for permanent impairment will be reduced to account for a preexisting condition, we first explain the longstanding method for calculating permanent partial disability under ORS 656.214, to which the legislature added the process for identifying, accepting, and denying "combined conditions." We then explain that "combined condition" process and our prior construction of the process in Schleiss , 354 Or. 637, 317 P.3d 244. Finally, we explain why the process proposed by employer allows a denial of compensation through a process that is inconsistent with the notice requirements that the legislature has otherwise specified in the workers' compensation laws. From those considerations, we conclude that the legislature intended the combined condition process to create an exception to the general rule that employers pay compensation for the full measure of the workers' permanent impairment if the impairment as a whole is caused in material part by the compensable injury, and we conclude that the legislature intended that employers would obtain the benefit of that exception only by issuing a denial of a "combined condition" and following the process that the legislature has specifically provided in ORS 656.268(1)(b) for reducing the worker's permanent partial disability.
A. Text and Prior Construction of ORS 656.214
As explained above, permanent partial disability means "[p]ermanent impairment resulting from the compensable industrial injury," and "impairment" is the loss of use or function "due to" the compensable injury. ORS 656.214 (1)(a).[6] The pertinent portions of that statute specify:
*72 "(1) As used in this section:
"(a) 'Impairment' means the loss of use or function of a body part or system due to the compensable industrial injury or occupational disease determined in accordance **474 with the standards provided under ORS 656.726 expressed as a percentage of the whole person.
"(b) 'Loss' includes permanent and complete or partial loss of use.
"(c) 'Permanent partial disability' means:
"(A) Permanent impairment resulting from the compensable industrial injury or occupational disease; or
"(B) Permanent impairment and work disability resulting from the compensable industrial injury or occupational disease.
"* * * * *
"(2) When permanent partial disability results from a compensable injury or occupational disease, benefits shall be awarded as follows:
"(a) If the worker has been released to regular work[7 ] by the attending physician * * *, the award shall be for impairment only. Impairment shall be determined in accordance with the standards provided by the Director of the Department of Consumer and Business Services pursuant to ORS 656.726(4). * * *.
"(b) If the worker has not been released to regular work by the attending physician *** the award shall be for impairment and work disability."[8]
Because claimant's attending physician released her to regular work, the permanent partial disability benefit that "shall be" awarded is determined exclusively by claimant's "impairment." ORS 656.214(2)(a). Thus, claimant's award for "permanent partial disability" is based on her permanent "loss of use or function" that is "due to the compensable industrial injury." ORS 656.214(1)(a) (emphasis added).
Claimant and employer disagree about the meaning of "loss of use or function * * * due to the compensable industrial injury," the phrase used to define "impairment." ORS 656.214(1)(a) (emphasis added). Claimant understands permanent impairment to be a single measure of the worker's **475 new loss of use or function "expressed as a percentage of the whole person." Id . If that new loss, as a whole, is caused in material part by the injury, claimant argues, then the impairment as a whole is "due to" the compensable injury, without reduction for other contributing causes. Employer disagrees. It argues that, if a portion of the worker's impairment is attributable to the compensable injury combining with a preexisting condition, then the portion of the loss that is attributable to the preexisting condition is not "due to" the compensable injury.
We have explained that, as used in ORS 656.214, "impairment due to" plausibly could mean either the impairment as a whole, or a portion of the impairment. Schleiss , 354 Or. at 643, 317 P.3d 244. However, earlier decisions from this court have clarified that claimant proposes the more plausible meaning of the general standard for calculating impairment under ORS 656.214. See Barrett v. D & H Drywall , 300 Or. 325, 709 P.2d 1083 (1985), adh'd to on recons , 300 Or. 553, 715 P.2d 90 (1986).
Before considering how the introduction of "combined conditions" alters the general rule, we begin by examining Barrett and its application of the longstanding method for calculating permanent partial disability under ORS 656.214. Because Barrett addressed a permanent partial disability dispute in a case very much like the present case-but prior to the addition of a combined condition process-it provides significant historical *73 context and identifies the foundation on which the legislature added the process for identifying, accepting, and denying "combined conditions."
As we explained in Barrett , the claimant fell at work and hit his back, and those "injuries were superimposed upon" an underlying disease of osteoarthritis that had been "asymptomatic for some time before the accident." 300 Or. at 330, 327, 709 P.2d 1083 (internal quotation marks omitted). The employer accepted responsibility for the consequences of the work accident but denied liability for the preexisting disease. At the time of claim closure, a dispute arose over whether the worker's permanent partial disability award should include a portion of the disability that doctors attributed to the osteoarthritis.
**476 The Court of Appeals had held that, in calculating the worker's permanent partial disability under ORS 656.214, impairment related to the osteoarthritis should not be considered. Barrett v. D & H Drywall , 73 Or. App. 184, 186, 698 P.2d 498 (1985). But this court disagreed. As we explained, "[t]he oft-expressed maxim still applies: An employer takes the worker as he finds him. Whether the worker suffers greater permanent partial disability * * * because of a preexisting condition is irrelevant in deciding the amount of loss of earning capacity caused by a new injury superimposed on a preexisting condition." Barrett , 300 Or. at 328, 709 P.2d 1083 (footnote omitted). On reconsideration, we clarified that the permanent partial disability award should not compensate the worker for the osteoarthritis itself "or for any disability that may have existed by reason thereof before the present compensable injury." 300 Or. at 555, 715 P.2d 90. However, if the work injury caused a preexisting "disease to produce symptoms where none existed immediately prior to the accident," and if "those symptoms produced loss of earning capacity, then that loss of earning capacity is 'due to' the compensable injury, and the statute requires an award of compensation therefor." Id. at 555-56, 715 P.2d 90.
To summarize, Barrett determined that the worker's permanent partial disability was the full amount of his new impairment, without reduction for the portion of that loss attributable to his preexisting condition. Given the legislature's subsequent adoption of the "combined condition" framework, Barrett does not resolve this case. But Barrett supplies the foundation and historical context for the legislature's enactment of the process for identifying and processing "combined conditions."
B. Text and Prior Construction of the Combined Conditions Process
Following Barrett , the legislature created a special status for "combined conditions," beginning in 1990 when it altered the definition of a "compensable injury" as part of an overhaul of Oregon's workers' compensation laws during a 1990 special legislative session. Or. Laws 1990, ch. 2, § 3 (Spec. Sess.); see Brown , 361 Or. at 265-66, 391 P.3d 773 (explaining the **477 1990 special session). Among other things, the 1990 legislation amended the definition of "compensable injury" to specify that when an "otherwise compensable injury combines *** with a preexisting condition to cause or prolong disability or a need for treatment," the combined condition "is compensable only if, so long as[,] and to the extent that[,] the otherwise compensable injury is the major contributing cause of the disability of the combined condition or the major contributing cause of the need for treatment of the combined condition." ORS 656.005(7)(a)(B).[9] Following that 1990 special session, however, the Court of Appeals concluded that the legislature had failed to create a process for denying combined conditions. Brown , 361 Or. at 279, 391 P.3d 773. The legislature addressed that oversight, and more, by adding numerous requirements for accepting and denying specific conditions, including "combined conditions."
1. Text of the "combined condition" processing statutes
The processing requirements that the legislature added to chapter 656 clarified that an *74 employer's "acceptance of a combined or consequential condition * * * shall not preclude the [employer] * * * from later denying the combined or consequential condition if the otherwise compensable injury ceases to be the major contributing cause of the combined or consequential condition" and also clarified that the employer "must issue a written denial to the worker when the accepted injury is no longer the major contributing cause of the worker's combined condition before the claim may be closed." Or. Laws 1995, ch. 332, § 28, codified at ORS 656.262(6)(c), (7)(b) (1995). In addition, new provisions required the employer to issue an "updated notice of acceptance" at the time of claim closure to specify "which conditions are compensable," and the legislature created a mechanism by which an injured worker can alert the employer "at any time" if the worker believes that a condition was incorrectly omitted from a notice of acceptance. Or. Laws 1995, ch. 332, § 28, codified at ORS 656.262(6)(d) (1995) ; Or. Laws 1997, ch. 605, § 1, codified at ORS 656.262(7)(c) (1997). All of those added procedures remain in the current version of ORS 656.262. **478 Especially pertinent to the question before us, the 1995 legislation created the specific process by which a claim may be closed with a permanent partial disability award that factors out the estimated contribution from preexisting conditions. ORS 656.268(1) (1995). In its current form, that statute specifies that an employer may close the claim when "[t]he accepted injury is no longer the major contributing cause of the worker's combined or consequential condition or conditions" and that,
"[w]hen the claim is closed because the accepted injury is no longer the major contributing cause of the worker's combined or consequential condition or conditions, and there is sufficient information to determine permanent disability, the likely permanent disability that would have been due to the current accepted condition shall be estimated."
ORS 656.268(1)(b).[10]
Finally, the legislature addressed the burden of proof for combined conditions in 2001. Or. Laws 2001, ch. 865, § 2. In general, the injured worker bears the burden of proving that an injury is compensable and of proving "the nature and extent of any disability resulting therefrom." ORS 656.266(1). However, "for the purpose of combined condition injury claims under ORS 656.005(7)(a)(B) only," the burden is reversed:
"Once the worker establishes an otherwise compensable injury, the employer shall bear the burden of proof to establish the otherwise compensable injury is not, or is no longer, the major contributing cause of the disability of the combined condition or the major contributing cause of the need for treatment of the combined condition."
ORS 656.266(2)(a).
**479 The parties advance diametrically opposed views regarding the significance of those post- Barrett statutory changes. Claimant contends that the legislature only intended to create an exception to the general rule from Barrett that permanent partial disability under ORS 656.214 includes the full measure of new impairment, as long as the disability as a whole is caused in material part by the compensable injury. She also contends that the legislature intended that employers would obtain the benefit of that exception only by using the process specified in ORS 656.268(1)(b), after issuing a "written denial to the worker when the accepted injury is no longer the major contributing cause of the worker's combined condition." ORS 656.262 (7)(b).
Employer, by contrast, understands the statutory changes since Barrett to have altered *75 fundamentally the calculation of impairment "due to" the compensable injury. Employer emphasizes that employers now must specifically list the accepted conditions in an updated notice of acceptance at closure and that an injured worker who believes that a condition has been omitted may object to the acceptance notice or initiate claims for a new or omitted condition "at any time."[11] See ORS 656.262(6)(d) ; ORS 656.267(1). If those additional conditions are accepted after claim closure, then the claim must be reopened, and the worker will receive additional permanent partial disability to address those additional conditions. See ORS 656.262(7)(c). According to employer, that process places the burden on the injured worker to request acceptance of a combined condition in order to receive permanent partial disability compensation **480 for the portion of impairment attributable to a preexisting condition. Applying that understanding of the statute to the present claim, employer notes that, although claimant does not deny that a preexisting condition contributed to the diminished range of motion on which her impairment rating is based, she failed to request that employer accept that combined condition.
The question is whether the legislature intended the combined condition statutory process to change the rule for calculating permanent partial disability whenever the employer identifies a "preexisting condition," or whether the legislature intended only to create an exception when a combined condition is identified, denied, and closed under the process set out in ORS 656.268(1)(b). Three aspects of the combined condition statutory framework persuade us that the legislature intended to create a limited exception to the general rule that Barrett described for calculating permanent partial disability under ORS 656.214. First, the legislature has provided a process for addressing an employer's liability for combined conditions, but the legislature has not changed the key phrase in ORS 656.214 that Barrett construed. Then, as now, the measure of permanent partial disability was the loss "due to" the compensable injury.[12] ORS 656.214(5) (1985), ORS 656.214(1)(a). Second, the legislature set out the standard for compensability in cases of "preexisting condition[s]" as an exception to the general definition of a "compensable injury," allowing employers to limit their liability for an "otherwise compensable injury." ORS 656.005(7)(a)(B). Third, the proof requirements for a combined condition suggest that the legislature intended that process to provide a limited exception. Only certain preexisting contributing causes qualify as a "preexisting condition" that can form a "combined condition," ORS 656.005 (24)(a), and once the worker proves a compensable injury, it **481 becomes the employer's burden to prove that the compensable injury has combined with a qualifying preexisting condition in a way that cuts off the employer's liability for medical care or disability. ORS 656.266(2)(a).
Thus, the text of the combined condition statutes suggests that the legislature intended "combined conditions" to be a limited exception to the general rule that the employer *76 is obligated to pay compensation for the full measure of the workers' disability. In addition, the legislature created a specific statutory process by which employers will obtain the benefit of that exception. In combination, those considerations suggest that the legislature did not intend for employers to obtain the same benefit by following some unspecified process, although that is not a foregone conclusion.[13]
2. Prior construction of the "combined condition" processing statutes
We, thus, turn to our decision in Schleiss , in which we addressed a related question. The worker in Schleiss had injured his back at work, and the insurer had accepted a claim for a lumbar strain. At claim closure, the worker had new impairment caused in part by the injury but also had preexisting degenerative joint disease and accelerated aging, to which the medical arbiters attributed a majority of the worker's impairment. Schleiss , 354 Or. at 640, 317 P.3d 244. The department awarded permanent partial disability compensation for only the portion of impairment that it viewed as "due to" the compensable injury, after reducing the measured impairment by the estimated contribution from the worker's degenerative disease and accelerated aging. Id.
The claimant in Schleiss challenged that reduction, and the parties raised essentially the same arguments as **482 the parties raise in this case. The claimant argued that, if "the compensable injury materially contributed to the total impairment, all the impairment is 'due to' the compensable injury," unless the employer has followed the combined condition closure process. Schleiss , 354 Or. at 643, 317 P.3d 244. But the insurer argued that the "claimant had the burden of asserting and proving" a compensable combined condition if the "claimant wished to have an impairment caused in part by a preexisting condition included in his [permanent partial disability] award[.]" Id . at 651, 317 P.3d 244. We concluded that it was "unnecessary" to resolve that disagreement in Schleiss because there was no evidence that the claimant had "a legally cognizable preexisting condition" that could form a combined condition. Id. As we explained, if a preexisting contributing cause is not a "legally cognizable preexisting condition" that would qualify to reduce the claimant's impairment as part of a "combined condition," then it does not "qualify to reduce the impairment that is 'due to' a claimant's compensable injury under ORS 656.214." Id . at 654, 317 P.3d 244.
Here, claimant acknowledges that she suffers from a legally cognizable preexisting condition, so it is necessary to resolve whether the legislature intended that employers will receive the benefit of an impairment deduction like that provided in ORS 656.268(1)(b) even when the employer has not denied a combined condition. As we have just emphasized, Schleiss stopped short of resolving that question. Id. at 651, 317 P.3d 244.[14] But Schleiss ' analysis of the combined condition statutes provides important guidance for this case in two ways.
First, Schleiss confirms that the impairment reduction for preexisting conditions is an exception to the general rule that all of a worker's impairment is "due to" the compensable injury if the impairment as a whole is caused in material part by the injury. As we explained, "[i]n this case, apart from the compensable injury, there are no other legally cognizable contributing causes that claimant's impairment **483 is 'due to' under either statute. It follows that all of claimant's impairment *77 is 'due to' the compensable injury for purposes of making a [permanent partial disability] award under ORS 656.214." Id. at 655, 317 P.3d 244.
Second, we attributed significance to the legislature's creation of a specific process for employers to follow to obtain the benefit of that exception. As we emphasized, "if a preexisting contributing cause would not qualify to reduce the impairment that is 'due to' a compensable combined condition under ORS 656.268(1)(b), it makes no sense to conclude that such a cause would qualify to reduce the impairment that is 'due to' a claimant's compensable injury under ORS 656.214." Id . at 654, 317 P.3d 244 (footnote omitted). That reasoning is significant because a "legally cognizable preexisting condition" is only one requirement for reducing the worker's impairment under ORS 656.268(1)(b) to account for a combined condition; it also requires that the condition has combined with the "otherwise compensable injury" and that the employer can meet its "burden of proof to establish the otherwise compensable injury is not, or is no longer, the major contributing cause of the disability of the combined condition." ORS 656.005(7)(a)(B) ; ORS 656.266(2)(a). Yet, if employers were able to use a preexisting condition to reduce the impairment that is "due to" the worker's compensable injury without expressly denying a combined condition, then there would be cases in which employers would obtain the benefit of the exception set out in ORS 656.268(1)(b), even though the preexisting condition would not qualify to reduce the worker's impairment under ORS 656.268(1)(b). To explain why that would be the result and why the legislature intended employers to issue a denial before reducing the impairment that is "due to" a claimant's compensable injury under ORS 656.214, we turn to the general notice requirements of the workers' compensation laws.
C. Additional Statutory Context
The broader context of the workers' compensation laws persuades us the legislature intended that the specified process for denying a "combined condition" and then closing the claim with reduced impairment under ORS 656.268(1)(b) would be the only process by which employers **484 obtain the benefit of that impairment reduction. Employer proposes that the legislature has created another process to ensure that injured workers are not denied permanent partial disability because of a preexisting condition unless the condition would qualify to reduce the worker's impairment under ORS 656.268(1)(b). Under that process, when the claim is closed with a reduced award for impairment, the worker also receives an updated notice of acceptance that will not list a "combined condition." ORS 656.262(7)(c). According to employer, a worker who believes that he or she has a compensable combined condition needs to request that the employer add that "combined condition" to the list of accepted conditions, as provided in ORS 656.262(6)(d). And if the employer ultimately accepts the combined condition-either voluntarily or after a hearing-then the worker's permanent partial disability award will be adjusted to account for the previously-denied portion of the impairment through a new notice of closure. ORS 656.262(7)(c).
However, asking the employer to accept a combined condition affords no solution for workers who dispute that they have a combined condition, either because they dispute that they suffer from a qualifying "preexisting condition" or because they dispute that their preexisting condition has combined with the compensable injury to cause greater disability.[15] Moreover, the process that employer proposes assumes that the worker, who may be unrepresented, understands that there is a need or opportunity to raise the *78 issue of a combined condition. That assumption is misplaced.
In general, the workers' compensation laws require specific written notice whenever an employer intends to deny compensation. ORS 656.262(9). The written notice must state "the reason for the denial" and must inform the worker "of hearing rights under ORS 656.283." Id. That is the notice that the worker will receive if the employer follows **485 the specified process and issues a denial of a combined condition before reducing its liability for permanent impairment that otherwise would be due under ORS 656.214. ORS 656.262(7)(b) (employer "must issue a written denial to the worker when the accepted injury is no longer the major contributing cause of the worker's combined condition before the claim may be closed").
However, if the employer reduces the worker's permanent partial disability in the notice of closure without first issuing a denial of a combined condition, then the partial denial of compensation is the same, but the notice is not. For example, the notice of closure in this case advised claimant only that her 16 percent impairment rating was "apportion[ed] 50%" for a compensable impairment of eight percent and that she had the right to appeal the notice of closure "by requesting reconsideration." The notice nowhere advised claimant of the reason for employer's refusal to provide compensation for half of claimant's impairment; it did not explain that employer had determined that claimant suffered from preexisting arthritis that was 50 percent responsible for her reduced range of motion or that she could challenge that determination at a hearing. And there is no requirement that a notice of closure contain that information. ORS 656.268(5)(c).[16]
**486 Although a worker is ultimately entitled to challenge the notice of closure at a hearing if the worker first requests reconsideration by the department, only issues raised and evidence submitted in the reconsideration process will be permitted at that hearing. ORS 656.283(6). Thus, absent a formal denial of a "combined condition," no other provision of the workers' compensation laws requires that the employer provide notice to the worker when the employer decides that a qualifying preexisting condition has combined with the compensable injury to create additional impairment for which the employer contends it is not liable. And no other process ensures that the worker will have the opportunity to challenge the employer's determinations in an evidentiary hearing. It is not plausible that the legislature intended employers to deny compensation to which a worker otherwise would be entitled for the worker's permanent impairment without providing a notice that affords the worker a meaningful opportunity to challenge that denial of compensation.
Moreover, absent sufficient notice for the worker to challenge the employer's determination regarding a "combined condition," there will be cases in which employers obtain the benefit of that exception even though the preexisting condition "would not qualify to reduce the impairment that is 'due to' a compensable combined condition under ORS 656.268(1)(b)."
*79 Schleiss , 354 Or. at 654, 317 P.3d 244. As we emphasized in Schleiss , "it makes no sense to conclude" that the legislature intended employers to obtain a reduction of "the impairment that is 'due to' a claimant's compensable injury under ORS 656.214," when the worker's preexisting condition does not qualify to reduce the worker's impairment under ORS 656.268(1)(b). Id. The legislature created a process that guarantees sufficient notice because the process requires a written denial of a "combined condition" before the employer reduces the impairment to account for a preexisting condition, and we conclude that the legislature intended employers to follow that process to obtain the benefit of that reduction.
**487 III. CONCLUSION
We conclude that the method for calculating impairment in cases of combined conditions is an exception to, and limitation on, the general rule that the employer pays compensation for the full measure of the workers' permanent impairment if the impairment as a whole is caused in material part by the compensable injury. We conclude that employers obtain the benefit of that exception only by issuing a denial of the "combined condition" and following the process that the legislature has specifically provided in ORS 656.268(1)(b) for reducing the worker's permanent partial disability. We understand the board to have found that claimant's 16% impairment was new impairment caused in material part by her accepted lumbar strain. Thus, in the absence of a combined condition denial, that impairment as a whole was "due to the compensable injury" and should have been reflected in the award of permanent partial disability.[17]
The decision of the Court of Appeals is reversed. The order of the Workers' Compensation Board is reversed, and the case is remanded to the Workers' Compensation Board for further proceedings.

The workers' compensation statutes address most claims-processing and payment obligations to the "insurer or self-insured employer." See, e.g. , ORS 656.005(8) ; ORS 656.262(7)(c). For clarity, and because the employer in this case is self-insured, we use the term "employer" when referring to the general claims-processing requirements that chapter 656 imposes on the "insurer [for an employer] or self-insured employer."

We have explained that "the 'injury' component of the phrase 'otherwise compensable injury' in ORS 656.005(7)(a)(B) refers to" the compensable medical condition. Brown v. SAIF , 361 Or. 241, 272, 391 P.3d 773 (2017).

ORS 656.005(24)(a) provides, in part, that a preexisting condition:
"means, for all industrial injury claims, any injury, disease, congenital abnormality, personality disorder or similar condition that contributes to disability or need for treatment, provided that:
"(A) Except for claims in which a preexisting condition is arthritis or an arthritic condition, the worker has been diagnosed with such condition, or has obtained medical services for the symptoms of the condition regardless of diagnosis[.]"

In rare cases, a worker may be unable to return to any work, and compensation is determined through a separate "permanent total disability" process. ORS 656.206. The statute at issue in this case governs only the determination of permanent partial disability.

The Court of Appeals and the board refer to this process as "apportionment." See McDermott v. SAIF , 286 Or. App. 406, 422, 398 P.3d 964 (2017).

An attempt to combine the two definitions produces an incongruity, with "permanent partial disability" meaning "permanent ['loss of use or function of a body part or system due to the compensable industrial injury'] resulting from the compensable industrial injury." Both parties urge us to construe the phrase "due to the compensable industrial injury," and neither proposes that the phrase "resulting from the compensable industrial injury" describes a more limited standard for causation. Thus, we resolve this case by construing the phrase "due to" the compensable industrial injury, as we did in Schleiss , 354 Or. at 655, 317 P.3d 244.

" 'Regular work' means the job the worker held at injury." ORS 656.214 (1)(d).

" 'Work disability' means impairment modified by age, education and adaptability to perform a given job." ORS 656.214(1)(e).

The legislature also added "consequential conditions," but that type of condition is not at issue here. Or. Laws 1990, ch. 2, § 3 (Spec. Sess).

ORS 656.268(1) (1995) provided:
"(1) One purpose of this chapter is to restore the injured worker as soon as possible and as near as possible to a condition of self support and maintenance as an able-bodied worker. Claims shall not be closed if the worker's condition has not become medically stationary unless:
"(a) The accepted injury is no longer the major contributing cause of the worker's combined or consequential condition or conditions pursuant to ORS 656.005(7) and the worker is not enrolled and actively engaged in training. When the claim is closed because the accepted injury is no longer the major contributing cause of the worker's combined *** condition[ ], the likely impairment and adaptability that would have been due to the current accepted condition shall be estimated."

Employer also argues that those listed "accepted conditions" now define the extent of the "compensable industrial injury" for purposes of calculating impairment "due to the compensable industrial injury." We have explained that the meaning of the term "compensable injury" is "context-specific"; in some of the workers' compensation statutes it has the meaning of "accepted conditions," but in others it "refers to the work accident." Garcia-Solis v. Farmers Ins. Co. , 365 Or. 26, 43, 38, 441 P.3d 573 (2019). We have not previously addressed the meaning of the term "compensable industrial injury" in ORS 656.214, and the issue is not squarely presented in this case. Rather, the board observed that "it is undisputed that claimant's permanent impairment is due *** in part to her accepted lumbar strain," and we allowed review to consider whether the board and Court of Appeals correctly limited claimant's permanent partial disability compensation to the estimated portion of her permanent impairment that is attributable only to the lumbar strain.

The version of the statute that we applied in Barrett specified that "the criteria for rating of disability shall be the permanent loss of earning capacity due to the compensable injury." 300 Or. at 330, 709 P.2d 1083 (quoting former ORS 656.214(5) (1985) ), while the statute now specifies that permanent partial disability is based on "impairment," which "means the loss of use or function of a body part or system due to the compensable industrial injury or occupational disease." ORS 656.214(1)(a). But the causal requirement for the relevant loss has not changed; it must be "due to" the compensable injury.

Neither party has identified pertinent legislative history for the 1990 and 1995 amendments. We surveyed the history for the 1990 changes in Brown and explained that "[i]n general, the focus of the new legislation was to make the state's workers' compensation system more cost-effective for employers and more efficient for workers." 361 Or. at 265, 391 P.3d 773. However, a generalized intention to reduce costs for employers does not meaningfully inform our analysis of how extensively the legislature intended to change the established understanding of permanent impairment "due to the compensable injury." We thus focus on the text and context of those statutes.

Schleiss held that the existence of a legally cognizable preexisting condition is necessary to permit a reduction of the worker's permanent partial disability, but that is not logically equivalent to employer's proposition that the existence of a legally cognizable preexisting condition is sufficient, on its own, to permit the reduction.

Although the record is clear in this case that claimant's arthritis would be a qualifying preexisting condition and that her compensable injury is not the major contributing cause of her impairment, the construction adopted by the department, board, and Court of Appeals is not limited to cases in which the worker agrees that a qualifying preexisting condition has combined with the compensable injury and is the major contributing cause of the permanent disability. It applies equally to cases in which the worker could successfully challenge either determination.

ORS 656.268(5)(c) specifies that the notice of closure "must inform":
"(A) The parties, in boldfaced type, of the proper manner in which to proceed if they are dissatisfied with the terms of the notice of closure;
"(B) The worker of:
"(i) The amount of any further compensation, including permanent disability compensation to be awarded;
"(ii) The duration of temporary total or temporary partial disability compensation;
"(iii) The right of the worker or beneficiaries of the worker who were mailed a copy of the notice of closure under paragraph (b) of this subsection to request reconsideration by the director under this section within 60 days of the date of the notice of closure;
"(iv) The right of beneficiaries who were not mailed a copy of the notice of closure under paragraph (b) of this subsection to request reconsideration by the director under this section within one year of the date the notice of closure was mailed to the estate of the worker under paragraph (b) of this subsection;
"(v) The right of the insurer or self-insured employer to request reconsideration by the director under this section within seven days of the date of the notice of closure;
"(vi) The aggravation rights; and
"(vii) Any other information as the director may require; and
"(C) Any beneficiaries of death benefits to which they may be entitled pursuant to ORS 656.204 and 656.208."

Claimant understands the department to have based its permanent partial disability determination on former OAR 436-035-0013, and she asks us to declare that rule invalid. However, the department's order contains no indication that it relied on that former rule, which Schleiss had already invalidated, and the department's new rule was adopted after its reconsideration decision in this case. Thus, we do not address the validity of the former rule. Nor do we accept employer's seeming request that we address the validity of current administrative rules, which were not applied in this case.