Argued and submitted January 5; decision of Court of Appeals reversed; order of Workers' Compensation Board reversed, and case remanded to Workers' Compensation Board for further proceedings July 1, 2021

In the Matter of the Compensation of
Randy G. Simi, Claimant.

Randy G. SIMI,
*Petitioner on Review,*

*v.*

LTI INC. - LYNDEN INC.,
*Respondent on Review.*

(WCB 1702216) (CA A168738) (SC S067483)

491 P3d 33

Several years after claimant's accepted claim for a rotator cuff tear was closed, claimant asked employer to accept two specific tendon tears as "new or omitted" conditions. Employer issued a denial on the ground that the conditions were not compensable, but then also took the position that the tendon tears were "encompassed" within the originally accepted rotator cuff tear. That change in position caused an administrative law judge (ALJ) to determine that the tendon tear conditions were compensable and set aside employer's denial. Following the ALJ's order, claimant argued that the employer was obligated to reopen the claim under ORS 656.262(7)(c), which provides: "[I]f a condition is found compensable after claim closure, the insurer or self-insured employer shall reopen the claim for processing regarding that condition." Majorities of both the Workers' Compensation Board and the Court of Appeals rejected claimant's interpretation of ORS 656.262(7)(c). *Held*: The legislature intended ORS 656.262(7)(c) to apply according its plain meaning: Employer denied that the tendon tear conditions were compensable; an ALJ then found that the denial had to be set aside because the conditions were compensable; and those actions all happened after claim closure. Under those circumstances, employer was required to reopen the claim for processing, regardless of whether the disputed conditions were "encompassed" within the scope of the original accepted conditions.

The decision of the Court of Appeals is reversed. The order of the Workers' Compensation Board is reversed, and the case is remanded to the Workers' Compensation Board for further proceedings.

On review from the Court of Appeals.*

Julene M. Quinn, Julene M Quinn LLC, Portland, argued the cause and filed the briefs for petitioner on review.

_____

\* On judicial review of an order of the Workers' Compensation Board. 301 Or App 535, 456 P3d 673 (2019).

Rebecca A. Watkins, Sather Byerly & Holloway LLP, Portland, argued the cause and filed the brief for respondent on review.

James S. Coon, Thomas, Coon, Newton & Frost, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association. Also on the brief was Jodie Phillips Polich, Law Offices of Jodie Phillips Polich, Milwaukie.

Before Walters, Chief Justice, and Nakamoto, Flynn, Duncan, Nelson, and Garrett, Justices, and Landau, Senior Judge, Justice pro tempore.**

FLYNN, J.

The decision of the Court of Appeals is reversed. The order of the Workers' Compensation Board is reversed, and the case is remanded to the Workers' Compensation Board for further proceedings.

---

** Balmer, J., did not participate in the consideration or decision of this case.

**FLYNN, J.**

In this workers' compensation case, we consider the scope of an employer's obligation under ORS 656.262(7)(c) to reopen a closed claim for processing if a "condition is found compensable after claim closure." The closed claim at issue here is claimant's accepted right rotator cuff tear, and the conditions giving rise to the dispute are supraspinatus and infraspinatus tendon tears, which claimant asked employer to accept as "new or omitted" conditions. Employer issued a denial specifying that the conditions were not compensable, but—without withdrawing the denial—employer later took the position that the tendon tears were "encompassed" within the originally accepted rotator cuff tear. That change of position caused an administrative law judge (ALJ) to determine that the tendon conditions are compensable and to set aside employer's denial.

According to claimant, that ALJ order triggered employer's obligation under ORS 656.262(7)(c) to reopen the claim. Employer contends, however, that the legislature has not required reopening if the compensable condition at issue is "encompassed within" the already-accepted conditions, even if the employer also had denied that the condition was compensable. A majority of the Workers' Compensation Board and a majority of the Court of Appeals panel agreed with employer, and we allowed review to consider this disputed question of statutory interpretation. Based on our examination of the statutory text and context, we conclude that the legislature intended employers to reopen compensable claims for processing when a compensability denial is set aside after claim closure, including under the circumstances of this case. Accordingly, we reverse the decision of the Court of Appeals.

## I.   BACKGROUND

The relevant facts are undisputed and primarily procedural.[1] Claimant has a history of work-related injuries to his right shoulder, including the 2010 injury out of which the present claim arises. In that incident, claimant

---

[1] We take the facts largely from the 2017 Opinion and Order of Administrative Law Judge Ogawa, which set aside employer's denial of compensability.

fell while working for employer as a milk truck driver, and employer accepted the claim for "right shoulder strain, right wrist strain, and right rotator cuff tear." Following surgery to repair a full thickness rotator cuff tear in the supraspinatus tendon, claimant's doctor declared his condition to be medically stationary, and employer closed the claim with an award for five percent whole person impairment.

A.   Simi I:   *The "Compensable Conditions" Dispute*

Several years later, an MRI scan of claimant's right shoulder identified various conditions, including "recurrent tear of the supraspinatus tendon, undersurface and intra-substance tear of the infraspinatus tendon, partial tear of the subscapularis insertion site, longitudinal tears of the biceps tendon, [and] posterior and superior labral tear." Claimant's doctor opined that the "recurrent tears" were "likely work related," and claimant submitted claims for compensation raising multiple theories of compensability. As pertinent here, one of the claims was a written request asking employer to issue modified notices of acceptance for the 2010 injury "to specifically accept as part of the compensable injury each of the following new or omitted conditions of the right shoulder: full thickness tear of the supraspinatus tendon; tearing of the infraspinatus tendon; failed repair of full thickness rotator cuff tear; [and] recurrent full thickness rotator cuff tear." Employer responded by issuing a "denial of workers' compensation benefits," which stated that, "[b]ased on the medical evidence currently available, it does not appear the [2010] injury materially caused" any of the conditions that claimant had asked employer to accept.

By the time that claimant's challenge to the denial reached a hearing, however, the doctor who had performed claimant's original surgery had explained to employer that a "rotator cuff" consists primarily of "the supraspinatus, infraspinatus and teres minor, as well as the subscapularis." The doctor also explained that the condition that he had diagnosed post-operatively as "torn rotator cuff" encompassed tendon tearing of claimant's supraspinatus and infraspinatus tendons. During litigation before the ALJ, employer modified its position with respect to the supraspinatus and infraspinatus tendon tears and contended that they did not

need to be accepted as "new or omitted" conditions because they were "encompassed within" the already-accepted "rotator cuff tear." But employer did not withdraw or amend its denial of compensability.

Although claimant primarily argued at the hearing that "incontrovertible medical evidence" established that his 2010 injury was a material contributing cause of the tendon tears, the ALJ reasoned that it was unnecessary to consider the factual question of compensability because employer's position at hearing—that the tendon tear conditions were "encompassed within" the acceptance of right rotator cuff—was "diametrically opposed" to a denial that the conditions were compensable. *See Randy G. Simi*, 69 Van Natta 1446, 1448 (2017) (*Simi I*) (board opinion describing reasoning of ALJ). On that basis, the ALJ ordered employer's denial of compensability set aside as to the supraspinatus and infraspinatus tendon tears.

Employer sought board review of the ALJ's opinion, contending that its denial was appropriate and should not have been set aside given the conclusion that the tendon conditions were "encompassed" within the accepted right rotator cuff tear. But the board disagreed and "adopt[ed] and affirm[ed] that portion of the ALJ's order that set aside the employer's denial of claimant's new/omitted medical condition claim for infraspinatus and supraspinatus tears." *Simi I*, 69 Van Natta at 1451. The board reasoned that employer's denial of compensability had to be set aside because employer "concedes that those conditions are compensable." *Id.* at 1451 n 7. As the board emphasized, in explaining why employer should be required to pay claimant penalties and attorney fees for unreasonably resisting the payment of compensation, "employer did not deny the new/omitted medical condition claim on the ground that the claimed conditions had been accepted as part of the rotator cuff tear." *Id.* at 1452. Instead, employer "denied that the claimed conditions were compensable" and "continued to deny the compensability of the claimed new/omitted medical conditions" through its failure to "rescind, or amend, its initial denial of compensability." *Id.* at 1452 & n 8. The Court of Appeals affirmed without opinion. *LTI, Inc. - Lynden Inc. v. Simi*, 295 Or App 143, 432 P3d 399 (2018).

B.    Simi II:    *The "Reopening" Dispute*

When employer failed to reopen despite the order setting aside the denial of compensability, claimant requested another hearing, this time contending that ORS 656.262 (7)(c) required employer to reopen the claim for processing. That statute provides, in part:

> "If a condition is found compensable after claim closure, the insurer or self-insured employer shall reopen the claim for processing regarding that condition."

ORS 656.262(7)(c).

The ALJ agreed with claimant and emphasized that employer had chosen to assert in its denial that the tendon conditions were not compensable, which "created the need for the prior ALJ to determine whether the conditions were compensable" and, ultimately, led to a "finding that the [tendon tear conditions] were compensable." But the board disagreed. With one member dissenting, the board focused on the circumstance that claimant's tendon conditions were "determined to be encompassed within an already accepted condition." *Randy G. Simi*, 70 Van Natta 929, 931 (2018) (*Simi II*). As a result, the board reasoned, ORS 656.262(7)(c) does not apply, because "those conditions were not 'found compensable' after claim closure, but rather at the time of the original acceptance of the previous condition." *Id.* at 932-33.

The Court of Appeals, also in a split decision, agreed with the board's understanding of the statute and affirmed. *Simi v. LTI, Inc. - Lynden Inc.*, 301 Or App 535, 456 P3d 673 (2019) (*Simi III*). The majority reasoned that the legislature could not have intended employers to reopen and process conditions that are found to be compensable on the basis that they are "encompassed in an original acceptance" because a condition that is encompassed within the accepted conditions "has already been correctly processed with the original claim." *Id.* at 542. Judge Lagesen dissented in part, explaining:

> "[I]t is hard to contend that claimant's [tendon tear conditions] were not 'found compensable after claim closure' in the ordinary sense of those words. Employer denied that

the conditions were compensable and then an ALJ found that they were compensable. All of that happened after claim closure."

*Id.* at 545 (Lagesen, P. J., dissenting in part). We allowed claimant's petition for review to resolve the continuing dispute over what ORS 656.262(7)(c) requires under the circumstances of this case.

## II.   DISCUSSION

As with all questions of statutory construction, we follow the analytical framework that we described in *State v. Gaines*, with the "paramount goal" of discerning the intent of the legislature. 346 Or 160, 171-72, 206 P3d 1042 (2009). Under that framework, we primarily consider the text and context of a statute, because "there is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes." *Id.* at 171 (internal quotation marks and citation omitted). We also consider legislative history when it "appears useful to the court's analysis." *Id.* at 172.

## A.   *Overview of Omitted Claims and Processing*

Before turning to the parties' arguments regarding the reopening requirement of ORS 656.262(7)(c), it is helpful to understand where that requirement falls in the broader claims-processing context under the Oregon Workers' Compensation Laws. Several recent decisions from this court have described the claims process in detail, so we highlight only a few concepts that are especially pertinent to the present dispute.

The first concept is compensability. As this court recently explained, "Oregon's workers' compensation law requires employers to provide compensation to workers who suffer 'compensable injuries,'" a term that is generally defined to mean "'an accidental injury * * * arising out of and in the course of employment requiring medical services or resulting in disability or death[.]'" *Garcia-Solis v. Farmers Ins. Co.*, 365 Or 26, 28, 441 P3d 573 (2019) (quoting ORS 656.005(7)(a) and ORS 656.017(1)). After suffering a compensable injury, "the worker may be entitled to a variety

of benefits through the period of recovery, including 'medical services for conditions caused in material part by the injury,' temporary disability compensation for lost wages, and permanent partial disability compensation." *Caren v. Providence Health System Oregon*, 365 Or 466, 469, 446 P3d 67 (2019) (quoting ORS 656.245).

The next significant concept is the role of accepted conditions. As we have explained, the workers' compensation laws sometimes use the term "compensable injury" to mean "the particular medical condition that an employer has accepted as compensable." *Brown v. SAIF*, 361 Or 241, 274, 391 P3d 773 (2017). When an injury is compensable, the employer[2] must give the worker "a written notice of acceptance of a claim, which is required to '[s]pecify what conditions are compensable.'" *Id.* at 250 (quoting ORS 656.262 (6)(b)(A) (brackets in *Brown*)). Relatedly, if a worker at any time "believes that a condition has been incorrectly omitted from a notice of acceptance," the worker must communicate that objection to the employer "in writing," and the employer then has 60 days to "revise the notice or to make other written clarification in response." ORS 656.262(6)(d). As we explained in *Brown*, the requirement of specificity with respect to "what conditions are compensable" codified a longstanding rule under our case law that "an employer's written acceptance had the effect of defining what constituted 'compensable injuries,'" with the result that it both "binds employers to cover the accepted conditions and prevents later attempts to retreat from covering what previously had been accepted." 361 Or at 274 (citing *Bauman v. SAIF*, 295 Or 788, 670 P2d 1027 (1983)).

The identified accepted conditions significantly affect the compensation to which an injured worker is entitled. In general, the accepted conditions determine whether the employer is obligated to pay for the worker's medical care and can determine whether the employer is obligated to

_____

[2] Many of the statutory processing obligations set out in ORS 656.262, and elsewhere in the workers' compensation laws, are directed to "the insurer [for an employer] or self-insured employer." For clarity, and because the employer in this case is self-insured, we use the term "employer" when referring to the general claims-processing requirements that chapter 656 imposes on the "insurer or self-insured employer."

pay temporary disability when the claimant misses work to receive medical care. ORS 656.245(1)(a) (employer "shall cause to be provided medical services for conditions caused in material part by the injury"); ORS 656.210(4) (describing circumstances under which employer must pay temporary disability when medical treatment requires the worker to leave work). The accepted conditions also govern the scope of an employer's obligation to pay compensation for a condition that results from the combining of the compensable medical conditions with a preexisting condition. *See Brown*, 361 Or at 282 (explaining that the test for whether a combined condition remains compensable looks to the contribution from "the particular medical condition that the employer accepted"). Finally, the accepted conditions can affect the amount of compensation to which the worker is entitled for "permanent partial disability," which generally compensates the worker for "[p]ermanent impairment resulting from the compensable industrial injury."[3] ORS 656.214 (1)(c)(A). Permanent partial disability specifically includes disability based on "[c]onditions that are direct medical sequelae to the original accepted condition * * * unless they have been specifically denied." ORS 656.268(15). And, in the case of a combined condition, permanent partial disability is based on an estimate of "the likely permanent disability that would have been due to the current accepted condition." ORS 656.268(1)(b).

The final significant concept is claim closure. When the worker's compensable conditions become medically stationary or cease to be the major contributing cause of a combined condition, the employer must close the claim. ORS 656.268(1)(a), (b). The employer must issue a notice of closure that addresses at least two categories of compensation that can be affected by the conditions specified in the notice of acceptance. First, the notice of closure must specify the amount of compensation to which the worker is entitled for any permanent disability. ORS 656.268(5)(c)(B). The closure also must specify all of the periods for which the worker was

---

[3] "Permanent partial disability" also includes permanent impairment resulting from a compensable occupation disease and can include "work disability"—meaning "impairment modified by age, education and adaptability to perform a given job." ORS 656.214(1)(c), (e).

entitled to temporary disability compensation and make financial adjustments to address overpayment or underpayment of the temporary disability compensation due as specified in the notice of closure. *Id.*; ORS 656.268(12). Also, at the time of claim closure, the employer must provide "'an updated notice of acceptance that specifies which conditions are compensable.'" *Caren*, 365 Or at 470 (quoting ORS 656.262(7)(c)). If there are disputes about the compensability of conditions not specifically identified in the updated notice of acceptance, the legislature has specified that those disputes are not to delay timely closure but, rather, "[i]f a condition is found compensable after claim closure, the insurer or self-insured employer shall reopen the claim for processing regarding that condition." ORS 656.262(7)(c).

B.   *The Meaning of ORS 656.262(7)(c)*

The final requirement described above is at the heart of the dispute in this case. ORS 656.262(7)(c) provides, in its entirety:

> "When an insurer or self-insured employer determines that the claim qualifies for claim closure, the insurer or self-insured employer shall issue at claim closure an updated notice of acceptance that specifies which conditions are compensable. The procedures specified in subsection (6)(d) of this section [which governs a worker's objection "that a condition has been incorrectly omitted from a notice of acceptance"] apply to this notice. Any objection to the updated notice or appeal of denied conditions shall not delay claim closure pursuant to ORS 656.268. *If a condition is found compensable after claim closure, the insurer or self-insured employer shall reopen the claim for processing regarding that condition.*"

(Emphasis added.)

Given what we have explained above regarding the concepts of a "compensable condition" and "claim closure," we are inclined to agree with the Court of Appeals' dissent that it is "hard to contend that claimant's supraspinatus and infraspinatus tears were not 'found compensable after claim closure" in the ordinary sense of those words.'" *Simi III*, 301 Or App at 545 (Lagesen, P.J., dissenting in part). In

the order that the board had affirmed in *Simi I*, the ALJ had determined that employer effectively was conceding the compensability of claimant's supraspinatus and infraspinatus tear conditions and set aside employer's outstanding denial of compensability as to those conditions. By doing so, the ALJ's order had established that those conditions are compensable, and that order undisputedly came "after claim closure."

We also conclude that, under those circumstances, the ALJ's order "found" the conditions to be compensable for purposes of ORS 656.262(7)(c). We recently considered the legislature's use of the same verb to describe the triggering event for a different workers' compensation statute. *See Arvidson v. Liberty Northwest Ins. Corp.*, 366 Or 693, 699, 467 P3d 741 (2020) (reviewing requirement of ORS 656.382(2) that employer must pay the claimant attorney fees if a reviewing body "finds that \*\*\* all or part of the compensation awarded \*\*\* should not be reduced or disallowed").[4] We concluded that the legislature intended the verb "finds" to convey its ordinary meaning, which—"most relevant for our purposes"—encompasses a reviewing body's conclusion or determination. *Arvidson*, 366 Or at 708 (quoting definitions of "find" in *Webster's Third New Int'l Dictionary* 852 (unabridged ed 2002) as meaning "'to arrive at (a conclusion) : come to (a finding) : determine and declare (as a verdict in a judicial proceeding) : agree or settle upon and deliver'"). Nothing about the text or context of ORS 656.262(7)(c) suggests that the legislature intended a different meaning for the verb when requiring that a condition must be "found compensable after claim closure."

---

[4] In using the verb form "is found," the legislature has used the passive voice of the verb "find," which we construed in *Arvidson*. *See The Chicago Manual of Style* § 5.112, 176 (15th ed 2003) ("The passive voice is always formed by joining an inflected form of *to be* \*\*\* with the verb's past participle."). We have observed that the legislature's use of passive voice sometimes "conveys its intent that a statute apply more broadly," *i.e.*, that application of statute does not depend on the identity of the actor, but at other times the passive voice "adds nothing to the meaning of a provision and instead generates ambiguity as to how the law should be applied." *Alfieri v. Solomon*, 358 Or 383, 399-400, 365 P3d 99 (2015) (describing holdings in *Powerex Corp. v. Dept. of Rev.*, 357 Or 40, 346 P3d 476 (2015), and *State v. Serrano*, 346 Or 311, 322, 210 P3d 892 (2009)). For purposes of this case, however, it is undisputed that the action of an ALJ can trigger the reopening requirement, so we have no need to consider whether the use of passive voice adds anything to the meaning of ORS 656.262(7)(c).

The broader statutory context also illustrates why the date of the ALJ's post-closure order is the relevant date on which the conditions were "found compensable." As shown above, the disputed statutory requirement is set out in the final sentence of ORS 656.262(7)(c). The sentences preceding it in the paragraph describe the requirements that the employer "shall issue at claim closure an updated notice of acceptance that specifies which conditions are compensable"; that any objection to the amended notice must follow "procedures specified in [ORS 656.262](6)(d)," which governs a worker's objection "that a condition has been incorrectly omitted from a notice of acceptance"; and that closure is not to be delayed by a pending "objection to the updated notice or appeal of denied conditions." The context indicates a legislative intent to create a procedural trade-off: rather than delay claim closure until the full scope of the compensable conditions has been resolved, claims will simply be reopened if a denied condition is later found compensable. Given that procedural choice, it is most plausible that the legislature intended for reopening to be triggered by the event of a condition being "found compensable," even if the condition is determined—retroactively—to have been compensable as of a date before the claim was closed.

The Court of Appeals' majority seemingly accepted that "found compensable after" refers to the date of the compensability determination, but it nevertheless reasoned that the legislature intended to limit that requirement to conditions that are in fact "new or omitted," *i.e.*, conditions that are found to be both compensable and different from the accepted condition. *Simi III*, 301 Or App at 542. According to the Court of Appeals' majority, it "would be a pointless act" to require an employer to reopen a claim for processing for "conditions that are only *alleged* to be new or omitted but that are determined to have been encompassed in an original acceptance," because such conditions will have "already been correctly processed with the original claim." *Id*. (emphasis in original). Employer urges this court to adopt the conclusion of the Court of Appeals' majority; we decline to do so, because the conclusion conflates two distinct concepts and rests on a factual premise that does not withstand scrutiny.

Claims for a "new or omitted condition" involve two distinct inquiries: whether a claimed "new or omitted condition" is compensable, and whether the condition is compensable but is not "new or omitted" because it has already been accepted. The first inquiry is required—at least on the part of the employer—any time an injured worker files a claim for a new or omitted condition. As with any claim for compensation, the employer may deny a claim for a new or omitted condition on the ground that the condition is not compensable. *See* ORS 656.262(7)(a) (providing that, if a worker with an accepted claim properly initiates a claim for a "new medical or omitted condition," the employer must furnish "written notice of acceptance or denial" within 60 days); ORS 656.245(1)(a) (providing that "[f]or every compensable injury, the insurer *** shall cause to be provided medical services for conditions caused in material part by the injury").[5] *See also SAIF v. Williams*, 304 Or App 233, 242, 466 P3d 1052 (2020) (claimant has burden to prove "existence and compensability of a new or omitted medical condition").

In addition, however, the Court of Appeals has approved an entirely distinct basis on which an employer may deny a claim for a new or omitted condition: by responding that the existing acceptance already includes the condition that the claimant believes to be "new or omitted." *See Akins v. SAIF*, 286 Or App 70, 73, 398 P3d 463, *rev den*, 362 Or 94 (2017) (rejecting claimant's argument that employer was required to accept the "new or omitted claim" for conditions that undisputedly "were included within the scope of the combined condition that SAIF already had accepted"). For example, in *Hartvigsen v. SAIF*, 291 Or App 619, 621, 421 P3d 375 (2018), the claimant filed a "new/omitted medical condition claim for bilateral deQuervain's tenosynovitis." The employer denied that claim on the basis that "[r]ecent medical evidence establishes that deQuervain's tenosynovitis is functionally identical to and encompassed by" the specifically accepted condition of "bilateral wrist

---

[5] We have explained that "[t]he material contributing cause standard does not govern the compensability of all conditions" because ORS 656.005(7)(a) specifies that "consequential" and "combined" conditions must be proven compensable under a "major contributing cause" standard. *Schleiss v. SAIF*, 354 Or 637, 644, 317 P3d 244 (2013).

sprain." *Id.* at 623 (internal quotation marks omitted). The board had upheld that denial, and the Court of Appeals affirmed "in light of the medical record before [the board]—specifically, [the attending physician's] opinion that claimant's 'wrist sprain' and deQuervain's tenosynovitis were one in the same." *Id.* at 626. Similarly, in *SAIF v. Stephens*, 247 Or App 107, 109, 113, 269 P3d 62 (2011), the Court of Appeals held that the insurer was not required to accept the worker's claim for an allegedly "new or omitted medical condition, 'coccydynia,'" given medical evidence that could only be interpreted as establishing that "coccydynia" was a symptom of the accepted condition of "coccyx bone bruise" and not a condition itself. *Cf. Crawford v. SAIF*, 241 Or App 470, 475, 478, 250 P3d 965 (2011) (affirming factual finding that condition of "intra-articular distal radius fracture left wrist" was different from accepted condition of "displaced left distal radius fracture" and, on that basis, rejecting as insufficient insurer's response that "'your request does not involve a condition other than the condition(s) initially (or previously) accepted'").

This court has never addressed the circumstances—if any—under which an employer permissibly may *deny* a "new or omitted condition" claim on the basis that the alleged "condition" is included within the scope of the accepted conditions.[6] Nor are we called upon to undertake that inquiry here, because employer did not deny the tendon conditions on that basis. Rather, employer undisputedly denied that the conditions were compensable and never withdrew or amended that denial. As the ALJ held and the board in *Simi I* explained, employer's written denial that the conditions were compensable was "diametrically opposed" to

---

[6] We note that different provisions of ORS 656.262 describe different required responses to an omitted condition claim. First, ORS 656.262(6)(d) specifies that, in response to a written communication that the injured worker believes a condition has been incorrectly omitted from a notice of acceptance, the employer has 60 days in which "to revise the notice or to make other written clarification in response." Second, ORS 656.262(7)(a) specifies that, in response to "new medical or omitted condition claims," the employer has 60 days to provide "written notice of acceptance or denial" of the claim. In any construction of those requirements, the court's task—"if possible"—is to adopt a construction that "will give effect to" both. *See* ORS 174.010 ("In the construction of a statute, * * * where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all.").

a denial on the basis that the conditions were not "new or omitted" because they were encompassed within the scope of the initially accepted condition. 69 Van Natta at 1448, 1451. That is because the two paths are mutually exclusive: if a condition is encompassed within the scope of the accepted compensable conditions, then the condition necessarily is compensable; and if the condition is not compensable, then it necessarily is not encompassed within the scope of the accepted compensable conditions. Even assuming that the Court of Appeals has correctly offered two permissible paths for employers to deny a new or omitted condition claim, the reasoning of the Court of Appeals in this case conflates those two mutually exclusive reasons for an employer to deny a claim for a new or omitted condition.

The reasoning of the Court of Appeals also relies on an unsupportable premise—that if an allegedly new or omitted condition is "determined to have been encompassed in an original acceptance," then the condition will have "already been correctly processed with the original claim." *Simi III*, 301 Or App at 542. Whatever the merits of that premise when applied to a condition as to which compensability has never been questioned, it does not survive scrutiny when applied to conditions that have been denied on the basis that they are not compensable. As explained above, by announcing to all concerned that particular conditions are not compensable, a denial can affect the compensation to which an injured worker is entitled in a variety of ways, including by altering the medical services for which a provider will be paid, altering the periods for which temporary disability compensation is due, and altering the calculation of permanent impairment when the claim is closed. 368 Or at 337-38. Given the significance of a denial of compensability, there is not a sound basis for the assumption of the Court of Appeals' majority that a denied condition will have been "previously processed" simply because it is ultimately "determined to have been encompassed in an original acceptance." *See Simi III*, 301 Or App at 542. Nor is there a sound basis for the assumption that it "would be a pointless act" to require that an employer reopen and process a closed claim when a denied condition is later found to be compensable. *See id.*

More significantly, the legislature rejected the premise that there is a category of disputed conditions for which it "would be a pointless act" to require reopening. Although we acknowledge that there will be claims for which the setting aside of a previously denied condition will produce no change in the calculations of temporary and permanent disability compensation to which the claimant is entitled, our analysis of the text and context of ORS 656.262(7)(c) persuades us that the legislature chose to leave that question to be answered as a factual matter and on a case-by-case basis.[7] Accordingly, we agree with the conclusion of the Court of Appeals' dissent that the legislature intended ORS 656.262(7)(c) to apply according to the plain meaning of the words: Employer denied that the conditions were compensable; an ALJ then found that the denial had to be set aside because the conditions were compensable; and "[a]ll of that happened after claim closure."[8] *Simi III*, 301 Or App at 545 (Lagesen, P. J., dissenting in part).

The board decision held both that employer was not required to reopen and process the claim and that employer should not have been assessed a penalty under ORS 656.262(11)(a). Our conclusion that employer must reopen the claim does not necessarily resolve whether employer

---

[7] Although claimant has supplied a great deal of legislative history, we agree with employer that "the legislative history offered by claimant adds little to the interpretation of the clause at issue." Employer cites only one piece of testimony, which it contends points to a legislative "intent that reopening occurs for conditions not taken into consideration in the acceptance notice." *See* Tape Recording, House Committee on Labor, HB 2971, May 20, 1997, Tape 84, Side A, at 3:45 (statement of Jan Reese, United Grocers and Management Labor Committee). That piece of legislative history is also not helpful, because we address claims in which the employer has asserted—through a denial of compensability—that the condition was not taken into consideration in the acceptance notice. Thus, the parties have identified no legislative history that is "useful to the court's analysis." *See Gaines*, 346 Or at 172.

[8] Our conclusion today addresses only those cases in which the employer has issued a denial of compensability. We offer no opinion regarding whether—or under what circumstance—a condition would be "found compensable" after claim closure when compensability of the condition has never been in dispute. Thus, we reject the assertion of the Court of Appeals' majority that this construction of the statute will mean that claims must be reopened for processing every time that "a condition that is *claimed* to be new or omitted (or an aggravation or combined condition) is determined to be encompassed within an original acceptance." *See Simi III*, 301 Or App at 542 (emphasis in original).

also must pay a penalty for its processing of the claim. We leave resolution of that dispute for the board on remand.

The decision of the Court of Appeals is reversed. The order of the Workers' Compensation Board is reversed, and the case is remanded to the Workers' Compensation Board for further proceedings.